AMERICAN BANK & TRUST COMPANY ET AL. *v.* FEDERAL RESERVE BANK OF ATLANTA, GEORGIA, ET AL.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 679. Argued April 13, 14, 1921.—Decided May 16, 1921.

1. A suit against a Federal Reserve Bank and its officers, *held* a suit arising under a law of the United States within the meaning of § 24, cl. 1, of the Judicial Code, such banks being creatures of the Federal Reserve Act. P. 356.

2. A Federal Reserve Bank is not a national banking association within § 24, cl. 16, of the Judicial Code, which declares that such associations, for the purposes of suing and being sued, shall (except in certain cases) be deemed citizens of the States where they are located. P. 357.

3. Several country banks of Georgia alleged that they derived an important part of their income from charges on payment of checks drawn by their depositors when sent in, usually through other banks, from a distance; that banks of the Federal Reserve System were

forbidden to make such charges; and that the defendant Federal Reserve Bank and its officers, in pursuance of a policy of the Federal Reserve Board, for the purpose of compelling the plaintiffs and like banks to become members of the system, or to open clearing accounts with the defendant, (which would deprive them of the aforesaid charges, reduce their lending power, and drive some of them out of business), intended to accumulate such checks in large amounts and then require cash payment at par by presentation over the counter or otherwise so as to compel plaintiffs to maintain so much cash in their vaults that they must either give up business or submit, if able, to the defendant's scheme. *Held,* that the bill stated a cause for an injunction. P. 357.

269 Fed. Rep. 4, reversed.

APPEAL from a decree of the Circuit Court of Appeals affirming a decree of the District Court, dismissing, for want of equity, a bill brought by divers state banks against a Federal Reserve Bank and its officers for an injunction. The facts are stated in the opinion.

*Mr. Alexander W. Smith,* with whom *Mr. T. M. Stevens, Mr. Orville A. Park* and *Mr. Greene F. Johnson* were on the briefs, for appellants.

*Mr. Robert S. Parker* and *Mr. Hollins N. Randolph* for appellees:

The Federal Reserve Banks have the right under the Federal Reserve Act to undertake, if so directed or authorized by the Federal Reserve Board, to accept checks and drafts payable upon presentation, upon whatever bank drawn. That basic right is substantiated by the terms of the law itself.

If this clearing of checks be undertaken, it must be carried out in a manner permitted by law.

The provision of the Federal Reserve Act that no charges made by a bank for collection or payment of checks and drafts, and remission therefor, by exchange or otherwise, shall be made against the Federal Reserve

Banks, clearly makes illegal the payment by defendant of such charges undertaken to be exacted by the payee bank for the "service" of remitting by mail.

If the Reserve Bank be prohibited from paying such charges, and if the payee bank refuse to forego the same, the Reserve Banks must collect in some other way, or else deny the business and commerce of the country the par collection of checks to which it is, at the option of the Reserve Banks, entitled.

The only methods for collecting checks, other than through a clearing house or through the mails, involve a presentation over the counter of the bank upon which the check is drawn. In this there is nothing illegal, unusual or untoward.

It follows, that if the non-member banks are entitled to the relief prayed, the result will be to balk the holder of any check, drawn upon a non-member or a non-clearing bank, in the exercise of his right to have the same cleared or paid through an agent of his own choice. If the holder of such a check wishes to avail himself of the collection service of a bank which may be a member of the Federal Reserve System, and if the machinery through which the member bank operates to clear checks be the Federal Reserve System, and if the Federal Reserve Bank be prohibited by the court's writ of injunction from collecting the check, in the only way lawful to it under the Reserve Act, the practical effect is to allow the payee bank to utilize the payment of such checks for its own aggrandizement, at the expense of the business and commercial interests of the country.

This bill should have been dismissed, because there is no basis therein laid for the relief in equity prayed. An injunction is asked against the commission of acts fundamentally and unquestionably legal, and it is to the substance of a bill that the court must look and not to the conclusions attempted to be predicated upon the averments of fact.

If acts done be lawful, the courts cannot inquire into the motive, even conceding for the purpose of this argument that the motives of the defendants might be criticized. It would be an absurd proposition, for instance, to say that a mortgagee with the mortgage debt in default, could be prevented from foreclosing the mortgage because of his desire to see ill fortune visited on the mortgagor.

The vague charges of compulsion and coercion designed to force the plaintiffs to join the Federal Reserve System are conclusions pure and simple, and cannot be maintained or supported by any allegation of fact contained in the bill. A threat to do a lawful thing which might deplete to some extent the profits of a bank adds no element of actionable wrong. It is no part of the duty of any financial institution so to conduct its affairs as to waive or forego legal rights in order that another institution may realize the maximum of profit from the conduct of its business. There is no injury in contemplation of law in those cases where the party who is alleged to have inflicted damage has inflicted such damage as an incident in and to the exercise on his part of a complete legal right.

It is a novel conception of "property" to regard it as embracing the "right" to make a profit upon a service which is not rendered. It is equally novel to conceive of an unlawful deprivation of property rights as being accomplished simply by abstaining from the invoking of a service for the rendition of which, if rendered, the party "deprived" would be entitled to a profitable compensation. *Tanenbaum* v. *New York Fire Insurance Exchange,* 68 N. Y. S. 342.

We respectfully submit that the doctrine of *sic utere tuo ut alienum non lædas* has no application. To carry out the policy of Congress, as embodied in the Federal Reserve Act, the actuating motive in so doing being to observe the letter and spirit of said act, and not to inflict

injury upon appellants, does not constitute a use of one's own property in such manner as to injure the rights or property of another.

A person only incidentally affected has no right to complain of an *ultra vires* act. *National Bank* v. *Matthews*, 98 U. S. 621. But, regardless of whether the appellants would have the right to enjoin the commission of an act by the appellee bank upon the ground that it en- tailed an unauthorized expenditure of its funds, this bank unquestionably has the charter right and corporate capacity to pay the expense of employing a messenger or agent to make collection of checks upon personal presentation. There is no merit in the contention that because a Reserve Bank is prohibited by law from pay- ing "exchange" charges exacted by banks to cover the "service" of remitting for checks and drafts, therefore, the prohibition extends to the incurring of any expense in and about such collections.

The legislative history of §§ 13 and 16 of the Federal Reserve Act supports our contention that the under- lying purpose of this legislation, with successive amend- ments designed to facilitate clearing, was to protect the clearing house established by the Federal Reserve Board, and not to prohibit Federal Reserve Banks from incurring such expenses in connection with the collection of checks as are not expressly prohibited in and by the specific terms of the statute. It follows, therefore, that there is nothing illogical in the position of the Federal Reserve Board and of the defendants in this case, viz: that they cannot, under the law, pay charges to a payee bank for remittances on account of checks and drafts drawn upon the bank undertaking to make the charge, but may legally pay the charges of an agent employed for personal presentation. To pay such "exchange" charges to a bank would be destructive of universal par clearance— to compensate an agent who may collect checks by per-

sonal presentation is in aid of the extension of these clearing functions, and not destructive thereof.

*The Solicitor General* and *Mr. Walter S. Logan,* by leave of court, filed a brief as *amici curiæ.*

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill in equity brought by country banks incorporated by the State of Georgia against the Federal Reserve Bank of Atlanta, incorporated under the laws of the United States, and its officers. It was brought in a State Court but removed to the District Court of the United States on the petition of the defendants. A motion to remand was made by the plaintiffs but was overruled. The allegations of the bill may be summed up in comparatively few words. The plaintiffs are not members of the Federal Reserve System and many of them have too small a capital to permit their joining it—a capital that could not be increased to the required amount in the thinly populated sections of the country where they operate. An important part of the income of these small institutions is a charge for the services rendered by them in paying checks drawn upon them at a distance and forwarded, generally by other banks, through the mail. The charge covers the expense incurred by the paying bank and a small profit. The banks in the Federal Reserve System are forbidden to make such charges to other banks in the System. Federal Reserve Act of December 23, 1913, c. 6, § 13, 38 Stat. 263; amended March 3, 1915, c. 93, 38 Stat. 958; September 7, 1916, c. 461, 39 Stat. 752; and June 21, 1917, c. 32, §§ 4, 5, 40 Stat. 234, 235. It is alleged that in pursuance of a policy accepted by the Federal Reserve Board the defendant bank has determined to use its power to compel the plaintiffs and others in like situation to become members of

the defendant, or at least to open a non-member clearing account with defendant, and thereby, under the defendant's requirements, to make it necessary for the plaintiffs to maintain a much larger reserve than in their present condition they need. This diminution of their lending power coupled with the loss of the profit caused by the above mentioned clearing of bank checks and drafts at par will drive some of the plaintiffs out of business and diminish the income of all. To accomplish the defendants' wish they intend to accumulate checks upon the country banks until they reach a large amount and then to cause them to be presented for payment over the counter or by other devices detailed to require payment in cash in such wise as to compel the plaintiffs to maintain so much cash in their vaults as to drive them out of business or force them, if able, to submit to the defendants' scheme. It is alleged that the proposed conduct will deprive the plaintiffs of their property without due process of law contrary to the constitution of Georgia and that it is *ultra vires.* The bill seeks an injunction against the defendants collecting checks except in the usual way. The District Court dismissed the bill for want of equity and its decree was affirmed by the Circuit Court of Appeals. 269 Fed. Rep. 4. The plaintiffs appealed, setting up want of jurisdiction in the District Court and error in the final decree.

We agree with the Court below that the removal was proper. The principal defendant was incorporated under the laws of the United States and that has been established as a ground of jurisdiction since *Osborn* v. *Bank of the United States,* 9 Wheat. 738. *Pacific Railroad Removal Cases,* 115 U. S. 1. *Matter of Dunn,* 212 U. S. 374. We shall say but a word in answer to the appellants' argument that a suit against such a corporation is not a suit arising under those laws within § 24 of the Judicial Code of March 3, 1911, c. 231, 36 Stat. 1087. The contrary is

established, and the accepted doctrine is intelligible at least since it is part of the plaintiffs' case that the defendant bank existed and exists as an entity capable of committing the wrong alleged and of being sued. These facts depend upon the laws of the United States. *Bankers Trust Co.* v. *Texas & Pacific Ry. Co.*, 241 U. S. 295, 306, 307. *Texas & Pacific Ry. Co.* v. *Cody*, 166 U. S. 606. See further *Smith* v. *Kansas City Title & Trust Co.*, 255 U. S. 180. A more plausible objection is that by the Judicial Code, § 24, sixteenth, except as therein excepted, national banking associations for the purposes of suits against them are to be deemed citizens of the States in which they are respectively located. But we agree with the Court below that the reasons for localizing ordinary commercial banks do not apply to the Federal Reserve Banks created after the Judicial Code was enacted and that the phrase "national banking associations " does not reach forward and include them. That phrase is used to describe the ordinary commercial banks whereas the others are systematically called "Federal Reserve Banks." We see no sufficient ground for supposing that Congress meant to open the questions that the other construction would raise.

On the merits we are of opinion that the Courts below went too far. The question at this stage is not what the plaintiffs may be able to prove, or what may be the reasonable interpretation of the defendants' acts, but whether the plaintiffs have shown a ground for relief if they can prove what they allege. We lay on one side as not necessary to our decision the question of the defendants' powers, and assuming that they act within them consider only whether the use that according to the bill they intend to make of them will infringe the plaintiffs' rights. The defendants say that the holder of a check has a right to present it to the bank upon which it was drawn for payment over the counter, and that however many checks

he may hold he has the same right as to all of them and may present them all at once, whatever his motive or intent.   They ask whether a mortgagee would be prevented from foreclosing because he acted from disinterested malevolence and not from a desire to get his money. But the word "right " is one of the most deceptive of pitfalls; it is so easy to slip from a qualified meaning in the premise to an unqualified one in the conclusion.   Most rights are qualified.   A man has at least as absolute a right to give his own money as he has to demand money from a party that has made no promise to him; yet if he gives it to induce another to steal or murder the purpose of the act makes it a crime.

A bank that receives deposits to be drawn upon by check of course authorizes its depositors to draw checks against their accounts and holders of such checks to present them for payment.   When we think of the ordinary case the right of the holder is so unimpeded that it seems to us absolute.   But looked at from either side it cannot be so.   The interests of business also are recognized as rights, protected against injury to a greater or less extent, and in case of conflict between the claims of business on the one side and of third persons on the other lines have to be drawn that limit both.   A man has a right to give advice, but advice given for the sole purpose of injuring another's business and effective on a large scale, might create a cause of action.   Banks as we know them could not exist if they could not rely upon averages and lend a large part of the money that they receive from their depositors on the assumption that not more than a certain fraction of it will be demanded on any one day.   If without a word of falsehood but acting from what we have called disinterested malevolence a man by persuasion should organize and carry into effect a run upon a bank and ruin it, we cannot doubt that an action would lie.   A similar result even if less complete in its effect is to be

350.                    Syllabus.

expected from the course that the defendants are alleged
to intend, and to determine whether they are authorized
to follow that course it is not enough to refer to the general
right of a holder of checks to present them but it is neces-
sary to consider whether the collection of checks and
presenting them in a body for the purpose of breaking
down the plaintiffs' business as now conducted is justified
by the ulterior purpose in view.

If this were a case of competition in private business it
would be hard to admit the justification of self-interest
considering the now current opinion as to public policy
expressed in statutes and decisions. But this is not private
business. The policy of the Federal Reserve Banks is
governed by the policy of the United States with regard
to them and to these relatively feeble competitors. We
do not need aid from the debates upon the statute under
which the Reserve Banks exist to assume that the United
States did not intend by that statute to sanction this sort
of warfare upon legitimate creations of the States.

*Decree reversed.*