## AMERICAN BANK & TRUST COMPANY ET AL. *v.* FEDERAL RESERVE BANK OF ATLANTA ET AL.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 717.  Argued April 30, May 1, 1923.—Decided June 11, 1923.

1. It is within the statutory powers of a federal reserve bank to collect checks on state banks within its district, which are not members of the federal reserve system, or affiliated with it through establishment of an exchange balance, and which refuse to assent to clearance at par, provided the checks be payable on presentation and can in fact be collected consistently with the legal rights of the drawees without paying an exchange charge.  P. 646.
2. Loss of income resulting to country banks from the exercise of this right without malice or coercion, is *damnum absque injuria.* P. 648.

284 Fed. 424, affirmed.

APPEAL from a decree of the Circuit Court of Appeals affirming a decree made by the District Court after final hearing, in a suit brought by numerous state banks against the Federal Reserve Bank of Atlanta and its officials.  The case was here before on a decree sustaining a demurrer to the bill.  256 U. S. 350.

*Mr. Alexander W. Smith,* with whom *Mr. Orville A. Park* and *Mr. Theodore H. Smith* were on the brief, for appellants.

*Mr. John W. Davis,* with whom *Mr. Hollins N. Randolph, Mr. Robert S. Parker* and *Mr. Montgomery B. Angell* were on the brief, for appellees.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

After the decision in this case reported in 256 U. S. 350, an answer was filed which denied, in large part, the allegations of the bill. Then, by an amended answer, the Federal Reserve Bank disclaimed any intention of demanding payment in cash, when presenting checks at the banks, and averred its willingness to accept payment in drafts, either on the drawee's Atlanta correspondent or on any other solvent bank, if collectible at par. The District Court heard the case upon the evidence. It found that the Federal Reserve Bank was not inspired by any ulterior purpose to coerce or to injure any non-member bank which refused to remit at par. It found that the evidence was insufficient to sustain any charge that the Federal Reserve Bank was exercising its rights so as to injure or oppress plaintiff banks. And it found, specifically, that the evidence did not sustain the charge that the Federal Reserve Bank accumulated checks upon non-member country banks until they reached a large amount and then caused the checks to be presented for payment over the counter, in order to compel plaintiff banks to keep in their vaults so much cash that they would be obliged either to agree to remit at par or to go out of business. With regard to publication on the par list of the names of non-assenting banks, the District Court held that the evidence did not justify a finding that such publication was made in order to injure or oppress plaintiff

banks. But it was of opinion that insertion of their names might lead to the belief that the plaintiff banks had agreed to remit at par. An injunction was, therefore, granted against inclusion of their names on the par list. The relief sought was in all other respects denied. The decree left the Federal Reserve Bank free to publish that it would make collection at par of checks upon any bank in any town, thus including those in which plaintiffs had their respective places of business. 280 Fed. 940. These findings were approved by the Circuit Court of Appeals; and the decree was affirmed. 284 Fed. 424.

The case is here on an appeal taken by the plaintiffs. The evidence was conflicting. No adequate reason is shown why the concurrent findings of fact made by the two lower courts should not be accepted by us. *Lucken-bach* v. *McCahan Sugar Refining Co.,* 248 U. S. 139, 145. Whether on the undisputed facts plaintiffs were entitled to additional relief is the main question for decision. In order to decide that question it is necessary to consider the course of business formerly prevailing and the changes wrought by the attempt to introduce universal par clearance and collection of checks through the federal reserve banks.

A large part of the checks drawn on country banks are sent to payees who reside in places other than that in which the drawee bank is located. Payment of such a check is ordinarily secured through the payee's depositing it in his local bank for collection. This bank ordinarily used, as the means for presenting the check to the drawee, a clearing house and/or correspondent banks. Formerly when the check was so presented, the drawee ordinarily paid, not in cash, but by a remittance drawn on his balance in some reserve city or by a credit with some correspondent. This process of collection yielded to the country bank a two-fold profit. It earned some profit by the small service charge called exchange, which

it made for the remittance or the credit. And it earned some profit by using the depositor's money during the period (sometimes weeks) in which the check was travelling the often circuitous route, with many stops, from the payee's bank to its own, and also while the exchange draft was being collected. These avenues to profit are, in large measure, closed by the federal reserve banks' course of action. These banks do not pay any exchange charges to the drawee. And their superior facilities so shorten the time required to collect checks that the drawee bank's balances available for loans are much reduced. Largely because of the fact that the reserve banks thus make the collection without any deduction for exchange, most checks on country banks are now routed through the reserve banks. Although there is, as the District Court found, no intentional accumulation or holding of checks in order to embarrass, the advantages offered by the federal reserve banks have created a steady flow in increased volume of checks on country banks so routed. That the action contemplated by the Federal Reserve Bank will subject the country banks to certain losses is clear.[1] In order to protect them from the resulting loss it would be necessary to prevent the federal reserve banks from accepting the checks for collection. For these banks cannot be compelled to pay exchange charges or to abandon superior facilities.

The contention is that the injunction should issue, because it is *ultra vires* the federal reserve banks to collect checks on banks which are not members of the system or affiliated with it, through establishing an exchange balance, and which have definitely refused to assent to clearance at par. It is true that Congress has created in the reserve banks institutions special in character, with lim-

---

[1] It is said that introduction of a universal system of par clearance and collection of checks through the federal reserve banks would bring compensatory advantages to the country banks.

ited functions and with duties and powers carefully prescribed. Those in respect to the collection of checks are clearly defined. The original act (Act of December 23, 1913, c. 6, § 13, 38 Stat. 251, 263) authorized the reserve banks to "receive from any of its member banks, and from the United States, deposits of . . . checks . . . upon solvent member banks, payable upon presentation; or, solely for exchange purposes, may receive from other Federal reserve banks deposits of . . . checks . . . upon solvent member or other Federal reserve banks, payable upon presentation."

By the amendment to § 13 of September 7, 1916, c. 461, 39 Stat. 752, the class of checks receivable was extended to " checks payable upon presentation within the district." By the amendment to § 13 of June 21, 1917, c. 32, § 4, 40 Stat. 232, 235, the class of banks from which checks might be received "solely for collection" was extended. By the latter amendment the facilities offered by the federal reserve banks were made available also to such non-members as became affiliated with the federal reserve system by establishing the required balance " to offset the items in transit." It is true, also, that in practice this amendment might result in excluding checks on particular banks from the class collectible through the federal reserve banks. For it enacted the clause which prohibits payment of exchange charges by federal reserve banks. And as this prohibition would prevent reserve banks from using the usual channels in making collection of checks drawn on those country banks which insist upon exchange charges, the reserve bank might find it impossible or unwise, as a matter of banking practice, to collect such checks at all. But the class of checks to which the reserve bank's collection service might legally be applied, was left by the amendment as those " payable upon presentation within its district." Wherever collection can be made by the federal reserve bank, without paying exchange, neither

the common law, nor the Federal Reserve Act precludes their undertaking it; if it can be done consistently with the rights of the country banks already determined in this case. 256 U. S. 350.

Federal reserve banks are, thus, authorized by Congress to collect for other reserve banks, for members, and for affiliated non-members, checks on any bank within their respective districts, if the check is payable on presentation and can in fact be collected consistently with the legal rights of the drawee without paying an exchange charge. Within these limits federal reserve banks have ordinarily the same right to present a check to the drawee bank for payment over the counter, as any other bank, state or national, would have. For § 4, (38 Stat. 251, 254) provides that the federal reserve banks shall have power:

" Seventh. To exercise by its board of directors, or duly authorized officers or agents, all powers specifically granted by the provisions of this Act and such incidental powers as shall be necessary to carry on the business of banking within the limitations prescribed by this Act."

The findings of fact negative the charges of wrongful intent and of coercion. The Federal Reserve Bank has formally declared that it is willing, when presenting checks, to accept in payment a draft of the drawee bank upon its Atlanta correspondent or a draft upon any other solvent bank—if collectible at par. Country banks are not entitled to protection against legitimate competition. Their loss here shown is of the kind to which business concerns are commonly subjected when improved facilities are introduced by others, or a more efficient competitor enters the field. It is *damnum absque injuria.* As the course of action contemplated by the Federal Reserve Bank is not *ultra vires,* we need not consider whether lack of power, if it had existed, would have entitled plaintiffs to relief. Compare *National Bank* v. *Matthews,* 98 U. S. 621; *Blair* v. *Chicago,* 201 U. S. 400, 450.

Some minor objections are urged. The Federal Reserve Bank of Atlanta serves, directly, only the Sixth Reserve District, which includes Georgia. It is contended that the decree should be reversed because the District Court refused to allow the intervention as plaintiffs of banks located outside of that district; because that court refused to admit evidence of the activities engaged in by other federal reserve banks in other districts under the approval of the Federal Reserve Board; and because the court admitted certain joint answers to interrogatories propounded under Equity Rule 58. We cannot say that the trial court abused the discretion vested in it, or erred, in so ruling.

*Affirmed.*