## PASCAGOULA NAT. BANK v. FEDERAL RESERVE BANK OF ATLANTA et al.

(District Court, N. D. Georgia.  December 19, 1924.)

No. 295.

**1. Banks and banking ⊜288½, New, vol. IIA Key-No. Series—Credit of checks received by reserve bank; regulation of Reserve Board held valid.**

The provision of regulation J of the Federal Reserve Board that checks received by a Reserve Bank from member banks will be counted as reserve or become available for withdrawal only from a date fixed by a time schedule based on experience of the average time required to collect checks, and that Reserve Bank acts only as agent, is not in violation of Federal Reserve Act, § 16(12) being Comp. St. § 9799, providing that "every Federal Reserve Bank shall receive on deposit at par from member banks or from Federal Reserve Banks checks and drafts drawn upon any of its depositors," especially in view of the provision of section 19, as amended in 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 9801), that the reserve of member banks shall be an "actual net balance."

**2. Banks and banking ⊜156—Check received for collection not received on "deposit."**

A check received by bank only as agent and without assuming any liability except for its own negligence, and guaranty of prior indorsements, is received for collection and not on "deposit" in the common sense of the word, as in a general deposit the check becomes at once the bank's property who owes the depositor the face of the check or other agreed sum.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Deposit.]

**3. Banks and banking ⊜288½, New, vol. IIA Key-No. Series—"Net" and "actual" as applied to reserve defined.**

Within Federal Reserve Act, § 19, as amended in 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 9801), providing that reserve of member banks must be an actual net balance, "net" means that all proper charges and deductions have been made from the account, and "actual" excludes what is merely fictitious or supposed.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Actual; Net.]

**4. Banks and banking ⊜288½, New, vol. IIA Key-No. Series—Reserve Bank not chargeable with exchange on remittance from member bank in payment of check.**

The provision of Federal Reserve Act, § 13 (1), as amended in 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 9796), permitting banks to make reasonable charges for collection or payment of checks and drafts and remission thereof, but providing that "no such charges shall be made against the Federal Reserve Banks," is valid, and prohibits a member bank

3 F.(2d)—30

from charging exchange on checks drawn on itself and received for payment and remission from a Federal Reserve Bank.

**5. Banks and banking ⊜288½, New, vol. IIA Key-No. Series—Reserve Bank may collect from member banks checks received from outside its district.**

Under Federal Reserve Act, § 13(1), as amended in 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 9796), Federal Reserve Banks may collect for other Federal Reserve Banks checks and drafts drawn on its members or checks sent to it by a member bank of another district by the authority and for the account of Reserve Bank of that district.

**6. Constitutional law ⊜278(1)—Provision of Federal Reserve Act held not to deprive bank of property without due process of law.**

The Federal Reserve Act, in requiring a member bank to pay without deduction checks drawn on it when presented by its Reserve Bank, whether paid over its counter or by check on its own deposit elsewhere, does not compel such payment by check, and does not deprive it of any property or right without due process of law.

In Equity.  Suit by the Pascagoula National Bank against the Federal Reserve Bank of Atlanta and others.  Decree for defendants.

Smith, Hammond & Smith, of Atlanta, Ga., for plaintiff.

Hollins Randolph and Robert S. Parker, both of Atlanta, Ga., for Federal Reserve Bank of Atlanta, and James A. McCord as federal reserve agent.

Walter Wyatt, of Washington, D. C., Montgomery B. Angell, of New York City, and Newton D. Baker, of Cleveland, Ohio, for Federal Reserve Board.

SIBLEY, District Judge.  The handling of checks between Federal Reserve Banks and nonmember banks of the Reserve system was dealt with in American Trust & Banking Co. v. Federal Reserve Bank of Atlanta, 256 U. S. 350, 41 S. Ct. 499, 65 L. Ed. 983; American Trust & Banking Co. v. Federal Reserve Bank of Atlanta, 262 U. S. 643, 43 S. Ct. 649, 67 L. Ed. 1153; and in Farmers' & Merchants' Bank of Monroe v. Federal Reserve Bank of Richmond, 262 U. S. 649, 43 S. Ct. 651, 67 L. Ed. 1157, 30 A. L. R. 635.  The present case involves the handling of checks between the Federal Reserve Bank and one of its members under regulation J of the Federal Reserve Board. That regulation, adopted to execute the collection and clearing house powers granted in section 13 and section 16 of the Federal Reserve Act (Comp. St. §§ 9796, 9799), re-

quires that each Federal Reserve Bank shall exercise the function of a clearing house and collect checks on terms and conditions particularly set forth, whose effect, so far as here material, is that each Reserve Bank will receive at par checks which can be collected at par, and only such, whether they be sent it by its own member and affiliated banks or by or for the account of other Reserve Banks, and whether the checks are drawn on its own member banks or nonmember banks, and that the checks sent each Reserve Bank will be counted as reserve or become available for withdrawal by the bank sending them (subject to final payment) only in accordance with a time schedule based on experience of the average time required to collect checks drawn on the different points. The observance of this regulation by the Reserve Bank of Atlanta results in a refusal by it to permit the complainant, one of its members, to deduct the previously charged "exchange" or compensation for remitting payment for checks drawn on complainant, and prevents complainant getting immediate credit for checks sent by it to the Reserve Bank when drawn on points at a distance from Atlanta, whereby it loses the use of the credit during the period of delay. The complainant contends, first, that by the provision of section 16 of the Reserve Act it is entitled to immediate credit, at par, for checks drawn on any of the depositors in the Reserve Bank of Atlanta, no matter at what distance from Atlanta the drawee may be; second, that under the Hardwick Amendment of section 13 (section 4, c. 32, 40 Stat. 234 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 9796]) it has the right to make a charge for remitting payment to the Reserve Bank of Atlanta of checks drawn on itself when these are not the property of the Reserve Bank, but are handled for collection; third, that under section 13 the Reserve Bank of Atlanta has no right to have or collect any checks drawn on complainant which come to the Reserve Bank from a source outside of the Sixth Reserve district; fourth, that, if the Reserve Act authorizes this deprivation of complainant's right to charge for remittance, it takes its property without due process of law, contrary to the Constitution. We consider these contentions in order.

[1-3] 1. The provision of section 16, which is claimed to require the immediate credit of checks is: "Every Federal Reserve Bank shall receive on deposit at par from member banks or from Federal Reserve Banks' checks and drafts drawn upon any of its depositors." Complainant, being a member bank, claims immediate credit, at par, for all the checks and drafts on the depositors of the Reserve Bank of Atlanta, who are either member banks of the Sixth Reserve district, the United States, or other Reserve Banks. Regulation J allows immediate credit for government checks and vouchers, and for items payable in the city where the Reserve Bank is located. When payable at a distant point the item is deferred for the number of days indicated on the time schedule, and then credited without any deduction (subject to final payment) whether returns have been actually received or not. Are these latter items "received on deposit at par?" Section 5 of regulation J states the terms on which checks sent to a Reserve Bank "for deposit or collection" will be handled, the first being: "A Federal Reserve Bank will act only as agent of the bank from which it receives such checks, and will assume no liability except for its own negligence and its guaranty of prior indorsements." A check so received and handled is really received for collection and not on deposit in the common sense of the word, meaning general deposit in which arises the relation of debtor and creditor, not that of principal and agent. Webster's International Dictionary; "Deposit." In a general deposit the check on indorsement and delivery to the banker becomes at once the property of the banker, who owes the depositor the face of the check, or other agreed sum, and becomes bound to honor the depositor's checks therefor. New York v. Massey, 192 U. S. 138, 145, 24 S. Ct. 199, 48 L. Ed. 380; McGregor, Receiver, v. Battle, 128 Ga. 577, 58 S. E. 28, 13 L. R. A. (N. S.) 185. The depositor's only relation to the check thereafter is his liability under his indorsement in case of nonpayment, a liability usually enforced by "charging the check back" to him. Usually the depositor may check immediately, but this is not of the essence of a general deposit. The parties may agree otherwise; and it is not uncommon in banking practice, where large checks, payable at a distance, are taken at par, to delay availability on the checking account so that the banker may not, by honoring checks in advance of collection, be lending his money without interest. The inclusion of the time schedule only in the terms upon which the reserve bank will receive deposits would be ordinary prudent banking, considering the enormous volume

of the aggregate Reserve Bank "float," as the mass of checks in transit is called. It may be noted that, by section 13, nonmember clearing banks are required to protect their deposited checks in transit by maintaining a balance sufficient to offset them, which is another way of saying that the checks are not available credits while in transit. It must be remembered also that these deposit accounts of the member banks in the Reserve Bank, though subject to check, constitute their reserve required under section 19. By amendment of this section (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 9801) this reserve must be "an actual net balance." "Net" means that all proper charges and deductions have been made from the account; "actual" excludes what is merely fictitious or supposed. Uncollected checks, though supposed to be drawn against actual, available deposits, may not be, and, if so, they may nevertheless be defeated of payment by many circumstances, such as death or countermand of the drawer, or offset by the banker upon the drawer's insolvency. An immediate credit of them must be largely on the faith of the depositor's indorsement, but the mere obligation of the member bank is not the actual reserve intended by the law. Moreover, the requirement that the Reserve Bank itself maintain a reserve in gold or lawful currency of 35 per cent. of its deposits is involved if the "float" is to be counted as present deposits. The time schedule by which credit is deferred until checks would ordinarily be collected minimizes the chance of accumulated disappointments in collection, and the amount of merely supposed balance in the reserves of members, and seems a very reasonable reconciliation of the requirement of section 16 that the checks be received on deposit in the reserve account, with that of section 19 that the reserves be actual net balances.

The additional stipulation that the Reserve Bank will act only as agent makes greater difficulty. It probably means that the checks are at first received only for collection. Ward v. Smith, 7 Wall. 447, 19 L. Ed. 207. "Deposits for collection" are spoken of in section 13, but "on deposit" in section 16 does not mean for mere collection. Since, however, credit is to be given at the expiration of the period fixed by the time schedule, whether returns from the check have actually been received or not, at that time, certainly the agency is to cease, and the check is to become and does become the property of the Reserve Bank, and the transaction ripens into a general deposit. The check is then "received on deposit at par," as required by section 16.

[4] 2. The next contention relates to charges not for collecting checks on others, but for remitting to the Reserve Bank payment of checks drawn on the member bank itself. Section 16 provides: "Nothing herein contained shall be construed as prohibiting a member bank from charging its actual expense incurred in collecting and remitting funds, or for exchange sold to its patrons. The Federal Reserve Board shall, by rule, fix the charges to be collected by the member banks from its patrons whose checks are cleared through the Federal Reserve Bank and the charge which may be imposed for the service of clearing or collection rendered by the Federal Reserve Bank." Whether the right established in the first clause quoted of a member bank to charge actual expenses for collecting and remitting would include a remittance in payment of checks drawn on it and presented by the Reserve Bank, or whether the term "its patrons" in the second sentence refers to those sending checks to the Reserve Bank, and implies that all expense of clearance of their checks is to be charged back to them, are questions that need not be decided. For the later legislation, known as the "Hardwick Amendment" of section 13, is directly applicable and controls. It provides that "nothing in this or any other section of this act shall be construed as prohibiting a member or non-member bank from making reasonable charges, to be determined and regulated by the Federal Reserve Board, but in no case to exceed ten cents per $100 or fraction thereof, based on the total of checks and drafts presented at any one time, for collection or payment * * * and remission therefor by exchange or otherwise; but no such charges shall be made against the Federal Reserve Banks." The complainant argues that the last clause is in the nature of a proviso or exception wholly repugnant to the main enactment preceding it, and therefore void, leaving the grant of the right to make reasonable charges unrestrained by the exception; or, if the last clause is to be treated as a part of the main enactment equally with what precedes, that the two parts are so inconsistent as to render the whole legislation abortive, and leave section 16 to control. As pointed out in Farmers' & Merchants' Bank of Monroe v. Federal Reserve Bank of Richmond, 262 U. S. 649,

666, 43 S. Ct. 651, 67 L. Ed. 1157, 30 A. L. R. 635, there is no such repugnance in the Hardwick Amendment as to cause either consequence. The right to make the charge is established as to checks sent for collection or payment by other member banks or nonmember banks, but it cannot be made against Reserve Banks. We therefore come to consider the contention that the charge is not made against a Reserve Bank unless such bank is the lawful owner of the checks dealt with, and that, if it is handling them only as the agent of another, for collection, the charge is against the true owner and to be passed back by the Reserve Bank to that owner. The proceedings of Congress in adopting the amendment show that par clearance through the Reserve Banks was the issue dealt with. The intent of the original amendment was to destroy such clearance as a Reserve Bank policy. The addition of the clause under discussion was made with the intent, and has the effect, to firmly establish it and give to the Reserve system and to the public whatever business advantage in clearing and collecting checks may follow therefrom, as well as to save the Reserve Banks from an expense in collecting their own checks. To forbid remittance charges against Reserve Banks means no more than that remittances to them shall not be diminished by such charges, without any enquiry, if that would be practicable, into the real ownership of the items remitted for. The Reserve Banks cannot recognize as proper such charges made against them, and in this sense are forbidden to pay them.

[5] 3. The contention that the Reserve Bank of Atlanta cannot handle for collection or deposit checks on complainant coming to it from sources outside the Sixth Reserve district is erroneous. The evidence is that the Reserve Bank handles no such checks on its members except those sent it by another Reserve Bank or by the members of another Reserve Bank by the latter's authority and for its account. Section 13 declares that any Federal Reserve Bank may "solely for the purposes of exchange or of collection, * * * receive from other * * * Reserve Banks * * * checks and drafts payable upon presentation within its district." These other Reserve Banks may receive from their members and nonmembers maintaining clearing balances "checks and drafts payable upon presentation" at any place. So checks drawn upon complainant coming to member banks or nonmember clearing banks in another Reserve district may be sent by them to the Reserve Bank of their district, and by it sent for collection or exchange to the Reserve Bank of complainant's district without going beyond the permissions of section 13. A check sent by a member bank by the authority and for the account of its Reserve Bank is in effect received from the latter.

[6] 4. The result of these provisions of the Reserve Act so construed is to require a member bank to pay without deduction checks drawn on it when presented by its Reserve Bank, whether paid over its counter or by the more convenient means of a check on its own deposits elsewhere. This takes none of the property or property rights of complainant without due process of law. Complainant may refuse to pay otherwise than in cash over its counter, according to the common law, as, on the other hand, the Reserve Bank may insist on that sort of payment. What is lost is the right to agree on a compensation for a more convenient payment by draft on more accessible reserves when both parties are willing so to agree. That the state, having power over the state banker and his business, may regulate his method of receiving and paying out his deposits was ruled in Farmers' & Merchants' Bank of Monroe v. Reserve Bank of Richmond, 262 U. S. 649, 43 S. Ct. 651, 67 L. Ed. 1157, 30 A. L. R. 635. A similar power must be recognized in the United States to regulate the banking in the Federal Reserve system. Complainant, being a national bank, chartered to do its business under the federal laws, cannot complain that those laws are not, or do not remain, such as it would prefer. It is not compelled to do anything without compensation. It is simply told that, if it does the thing in question, it must be done without compensation. Noble State Bank v. Haskell, 219 U. S. 575, 31 S. Ct. 299, 55 L. Ed. 341.

The evidence offered by the defendants as to the actual conduct of their business is pertinent and admissible. The remainder, relating mainly to matters either irrelevant or to be judicially known, is excluded.

Nothing unlawful appearing in any of the acts of the defendants complained of, a decree may be taken dismissing the bill.