**COMMUNITY BANK et al., Appellants,**

v.

**FEDERAL RESERVE BANK OF SAN FRANCISCO, and Board of Governors of the Federal Reserve System, Appellees.**

**No. 73–1808.**

United States Court of Appeals,
Ninth Circuit.

July 22, 1974.

James B. Irsfeld, Jr. (argued), of Irsfeld, Irsfeld & Younger, Hollywood, Cal., for appellants.

Michael Kimmel (argued), Dept. of Justice, Washington, D. C., for appellees.

## OPINION

Before TRASK and SNEED, Circuit Judges, and POWELL,* District Judge.

SNEED, Circuit Judge:

On June 21, 1972, the Board of Governors of the Federal Reserve System unanimously approved changes in Regulation J, 12 C.F.R. § 210, which governs the collection of checks and other items by Federal Reserve Banks. Appellant State Banks, who are neither members of nor affiliated with the Federal Reserve System, object to the amendments to Regulation J insofar as they affect nonmember and non-affiliated payor banks.

Briefly stated, the changes in Regulation J affect both the *time* and *manner* in which payor banks must settle for demand items presented for collection by Reserve Banks. Prior to the amendments, payor banks became accountable if they failed to settle for demand items before midnight of the banking day of receipt, and settlements made earlier could be revoked prior to the midnight deadline. The amendments to Regulation J advance the settlement *time* to the *close* of the banking day of receipt, and only if settlement is made prior to this time may it be revoked before midnight of the banking day of receipt. The amendments also affect the *manner* in which settlement may be made by eliminating drafts drawn on other banks as permissible forms of settlement.[1]

Appellants attack the amendments to Regulation J on two broad grounds. First, they urge that the changes are inconsistent with the time and manner of settlement provisions contained in the California Commercial Code, which they contend should govern the operations of nonmember banks chartered under the laws of the State of California. Second, they argue that, to the extent that they attempt to bind payor banks which are not members of the Federal Reserve System, the amendments to Regulation J exceed the power conferred on the Board under the Federal Reserve Act.

Appellant State Banks' application for a preliminary injunction was denied by the district court on October 10, 1972, and on February 8, 1973, the court en-

---

* Honorable Charles L. Powell, Senior Judge, Eastern District of Washington, sitting by designation.

1. Prior to the amendments, the time and manner of settlement provisions of Regulation J and the California Commercial Code were virtually identical.

tered summary judgment in favor of appellees. We affirm.

Our consideration of the issues presented in this appeal will begin with a brief description of the check collection process and the effects of the amendments to Regulation J on this process. We will then turn to a more detailed examination of the provisions of the California Commercial Code and Regulation J to determine if the amendments to the regulation give rise to a federal-state conflict in the area of banking regulation. Finally, finding no such conflict, we will consider whether Regulation J as amended exceeds the scope of authority conferred on the Board by the Federal Reserve Act.

I.

*Background*

Approximately 25 billion checks were collected by banks in 1972; of these, eight billion, or roughly one-third, were handled by Federal Reserve Banks. The Reserve Banks provide check collection services for member banks and affiliated nonmember banks which maintain a certain balance with a Reserve Bank;[2] neither the members nor the affiliated nonmembers, however, are required to use the services of the Reserve Banks to collect checks which have been presented to them.

To handle the increased volume of checks, Federal Reserve and other large banks now use computer-controlled, highspeed electronic sorters which are capable of handling 1000 checks per minute. For this purpose, "Magnetic Ink Character Recognition" (MICR) units are pre-printed on each check. The first group of four digits in the MICR number encoded on the bottom of each check designates the Federal Reserve district, territory, and relationship to the local Federal Reserve office.[3] Each of the appellant State Banks encode their checks with a MICR number that begins with "12", which indicates that they are located in the district of the Federal Reserve Bank of San Francisco. The consequence of this is that checks which are drawn on appellants may be presented by a member or affiliated nonmember bank for collection through the Federal Reserve system.

When checks are presented to a Reserve Bank for collection, settlement is made on the basis of a deferred-payment schedule. This schedule is, with one important exception, based on the amount of time usually required for the Reserve Bank to collect items of a similar type. Since checks drawn on banks in the same city may usually be collected on the same day, same-day credit is passed to the depositor. Checks drawn on banks in other cities having Federal Reserve offices may usually be collected the following day; accordingly, one-day credit is passed to the depositor. Two-day credit is passed when the check is drawn on banks located within the same Federal Reserve territory but outside of a Reserve office city. The exception exists because, while three days may be required to collect checks drawn on banks outside of the Reserve territory and not located in an office city,[4] two-day credit is the maximum length of deferment for any check presented to a Reserve Bank for collection.[5] Thus, in this latter situation the Reserve Bank pays for a check on the basis of the deferred-payment schedule one day before that check is actually collected; this effectively gener-

---

2. *See* 12 U.S.C. § 342.

3. In addition, the numerator of the fraction located on the upper right-hand portion of appellants' checks represents the Federal Reserve routing number.

4. The three days include: (1) one day to process the item at the Reserve Bank of first receipt and transmit it to the Reserve Bank for the area in which the payor bank is located; (2) one day for the item to be processed by the second Reserve Bank and transmitted to the payor bank; and (3) one additional day to receive the remittance.

5. Federal Reserve Operating Circular No. 1.

ates a one-day, interest-free loan to the bank involved. The total amount of such loans is known as Federal Reserve "float." Aggravating the problem of delay in the process of settlement is the practice of some payor banks to settle by means of drafts drawn on other banks.[6]

To alleviate these problems, the amendments to Regulation J (1) advance the time within which payor banks must settle for checks presented for collection by Reserve Banks, and (2) eliminate the use of bank drafts as permissible forms of settlement by requiring settlement to be in immediately-available funds. The resulting acceleration of the process, in turn, enables the Reserve Bank in some instances to pass earlier credit to the depositor bank. From the vantage point of the Federal Reserve, the changes are particularly desirable in that they tend to reduce the problem of "float."[7]

## II.

### State Law

We now turn to a consideration of whether the amendments to Regulation J are, as the appellants insist, in conflict with the pertinent provisions of the California Commercial Code.

### A. Time of Settlement

Two principal California Commercial Code [8] provisions governing the time in which a payor bank must settle when presented with a check for collection are affected by the amendments to Regulation J. Section 4302[9] makes a payor bank accountable if it retains an item beyond midnight of the banking day of receipt without settling for it, and Section 4301[10] allows the payor banks to revoke a provisional settlement if such revocation is made before the

---

6. A draft on the remitting bank itself is not permissible because it would merely substitute for the original item another item on the same payor. California Commercial Code § 4211(a).

7. The elimination of float, which approximates $2 billion a year, causes a comparable loss of reserves for those banks enjoying the deferred-payment aspects of this system. To ease this blow, the Board amended Regulation D, 12 C.F.R. § 204, to permit members of the Federal Reserve to reduce their reserve requirements proportionately. Although the lowering of reserve requirements does not benefit nonmember appellants, the California Superintendent of Banks has announced his intention to reduce the reserve requirements applicable to the State Banks in order to offset the same-day requirements for checks collected through the Federal Reserve System.

8. Unless otherwise indicated, all citations are to provisions of the California Commercial Code.

9. Section 4302 provides, *inter alia:*
   In the absence of a valid defense such as breach of a presentment warranty (subdivision [1] of Section 4207), settlement effected or the like, if an item is presented on and received by a payor bank the bank is accountable for the amount of
   (a) A demand item other than a documentary draft whether properly payable

or not if the bank, in any case where it is not also the depositary bank, retains the item beyond midnight of the banking day of receipt without settling for it or, regardless of whether it is also the depositary bank, does not pay or return the item or send notice of dishonor until after its midnight deadline; or

. . . .

10. Section 4301 provides, *inter alia:*
   (1) Where an authorized settlement for a demand item (other than a documentary draft) received by a payor bank otherwise than for immediate payment over the counter has been made before midnight of the banking day of receipt the payor bank may revoke the settlement and recover any payment if before it has made final payment (subdivision [1] of Section 4213) and before its midnight deadline it
   (a) Returns the item; or
   (b) Sends written notice of dishonor or nonpayment if the item is held for protest or is otherwise unavailable for return.
   (2) If a demand item is received by a payor bank for credit on its books it may return such item or send notice of dishonor and may revoke any credit given or recover the amount thereof withdrawn by its customer, if it acts within the time limit and in the manner specified in the preceding subdivision.

. . . . .

midnight deadline.[11] Section 210.-9(a)(1) of the amended Regulation J, however, makes a payor bank accountable if it fails to settle for demand items before the close of its banking day of receipt, and Section 210.12(a) provides that only if settlement has been made by this time may the payor bank revoke prior to midnight of the banking day of receipt.

Taken this far, Regulation J quite obviously is in conflict with the above provisions of state law. The conflict disappears, however, in light of the flexibility provided in Section 4103 of the Commercial Code. Subsection (1) of this provision permits variation of the Code's provisions by agreement, and subsection (2) provides that "Federal Reserve regulations and operating letters, clearing house rules, and the like, have the effect of agreements . . . whether or not specifically assented to by all parties interested in the items handled."

Appellants contend that Section 4103(2) does not operate to make Federal Reserve regulations binding on nonmember, payor banks. We disagree. The legislative history behind the language of subsection (2), which elevates Federal Reserve regulations to the status of agreements, "whether or not specifically assented to by all parties interested in the items handled," makes clear that it may be applicable to non-member payor banks. The California Commercial Code Comment indicates that, under prior California law, clearinghouse rules

"did not govern the rights of a *drawer* and *payee* who were not members of the clearinghouse and who did not contract with express reference to those rules." (emphasis added). The reference to the rights of drawers and payees under "prior California law" suggests that the Code has changed this result. That this change effected by the Code is *not* limited to drawers and payees is indicated by the breadth of the following comment of the Senate Fact Finding Committee: "Subdivision 2 apparently changes the rule insofar as it applies between *parties* who are not members of the clearinghouse." (emphasis added). Sixth Progress Report to the Legislature by the Senate Fact Finding Committee on the Judiciary: Part I, The Uniform Commercial Code 87.

The Report of the New York Law Revision Commission contains an even stronger indication that Section 4103(2) is applicable to nonmember, payor banks which affiliate themselves with the Federal Reserve's check collection process:

Federal Reserve Regulations and operating letters now operate as 'agreements' between the Federal Reserve Banks and banks using the Federal Reserve facilities for collection, and clearinghouse rules now operate of course as agreements among member banks and banks clearing through banks that are members of the clearinghouse association. *They are similarly effective as agreements binding on other banks, and their customers,*

---

11. Section 4104 of the Commercial Code provides:

(c) 'Banking day' means that part of any day on which a bank is open to the public for carrying on substantially all of its banking functions;

. . . . .

(h) 'Midnight deadline' with respect to a bank is midnight on its next banking day following the banking day on which it receives the relevant item or notice or from which the time for taking action commences to run, whichever is later;

. . . . .

Section 4107 provides:

(1) For the purpose of allowing time to process items, prove balances and make

the necessary entries on its books to determine its position for the day, a bank may fix an afternoon hour of 2 p. m. or later as a cutoff hour for the handling of money and items and the making of entries on its books.

(2) Any item or deposit of money received on any day after a cutoff hour so fixed or after the close of the banking day may be treated as being received at the opening of the next day.

These provisions of the California Commercial Code are consistent with Section 210.9(a) of Regulation J, as amended.

*whenever a claim of agency and subagency can be made out connecting the remote bank, and its customer, with the banks that are parties to the agreement,* and the agency includes, as a term of the agreement binding the remote party, the power to adhere to that agreement on behalf of the remote principal. Explicit agreement is sometimes difficult to spell out, however. *Section 4103(2) postulates an implied assent as a rule of law.* (emphasis added).

2 Report of the New York Law Revision Commission for 1955: Study of the Uniform Commercial Code 1262–63. The "claim of agency or subagency" referred to in the Report, which constitutes the necessary predicate for Federal Reserve regulations to be binding on nonmember banks, is readily established by the current voluntary use of MICR members by appellants.

As mentioned above, each of appellants encode their checks with the number "12", which indicates that they are located in the 12th Federal Reserve district. Obviously, if this number is merely removed, appellants' checks cannot be electronically processed. If, however, it is replaced by appropriate symbols, the checks may be electronically processed and collected *outside* of the Federal Reserve system.

That elimination of the Federal Reserve routing numbers is commercially feasible is demonstrated by the current practices of nonpar banks. Since Reserve Banks are prohibited by statute from paying an exchange fee, 12 U.S.C. § 342, checks drawn on nonpar banks cannot be collected through the Federal Reserve system. Nonpar banks replace the Federal Reserve routing number on the lower left-hand portion of their checks with the number "9". This enables the checks of nonpar banks to be electronically processed even though the MICR number begins with a "9" and even though it does not contain a number referring to any Federal Reserve office. A somewhat similar system as an alternative to the use of Federal Reserve routing numbers is available to appellants. The fact that nonmember banks may find it less commercially advantageous than utilizing the Federal Reserve routing number does not militate against this conclusion.

In sum, appellants are not required to include the Federal Reserve routing number on their checks, and so long as they continue to use this number, the "claim of agency or subagency" referred to in the Report of the New York Law Revision Commission exists, and the terms of Regulation J are binding upon them because of the operation of Section 4103(2).

### B. Manner of Settlement

The asserted conflict between the amended Regulation J and Section 4211 of the California Commercial Code is also nonexistent.

Section 4211 lists six forms of remittance which "a collecting bank may take in settlement of an item." [12] The first of these, Section 4211(1)(a), is "a check of the remitting bank or of another bank or any bank except the remitting bank." Section 210.9(a) of Regulation J, however, provides that settlement shall be affected in one of three ways: (1) a debit to an account on the books of a Federal Reserve Bank; (2) payment in

12. Section 4211 provides, *inter alia*:
(1) A collecting bank may take in settlement of an item
(a) A check of the remitting bank or of another bank on any bank except the remitting bank; or
(b) A cashier's check or similar primary obligation of a remitting bank which is a member of or clears through a member of the same clearinghouse or group as the collecting bank; or
(c) Appropriate authority to charge an account of the remitting bank or of another bank with the collecting bank; or
(d) If the item is drawn upon or payable by a person other than a bank, a cashier's check, certified check or other bank check or obligation; or
(e) Credit on the books of any federal reserve bank or of any bank designated as a depositary by the collecting bank; or
(f) Money.

cash, or (3) at the discretion of the Federal Reserve Bank, any other form of remittance, provided that the proceeds of such payment are available to the Reserve Bank "not later than the close of the banking day for such Federal Reserve Bank on the day on which such item was so received by the paying bank." A check of the payor bank drawn on another bank would not be convertible into proceeds within the time limits set forth in Section 210.9(a) of the amended Regulation J; thus, Section 4211(1)(a) of the Commercial Code is no longer available as a means of settlement for checks cleared through the Federal Reserve system.

Appellants argue that Section 4211 treats settlement as a two-way proposition, and that it was designed for the convenience of *both* the payor and the collecting banks. From this, they conclude that the collecting bank, in this case the Federal Reserve, does not have the option of refusing to accept any of the six forms of settlement listed in Section 4211.

■ Those contentions are refuted by the background of and change effected by Section 4211. At common law, a collecting bank which accepted anything short of specie in settlement did so at its own risk.[13] As the Uniform Commercial Code Comment makes clear, the purpose of Section 4211 is to protect the collecting bank if it accepts something less than legal tender:

Subsection (1) states various types of remittance instruments and authorities to charge which may be received by a collecting bank in a settlement for an item, without the collecting bank being responsible if such form of remittance is not itself paid . . . . Since it is not feasible for banks to perform their collection functions except with the use of these provisional remittances, they should not be penalized for acting in the only way they can act.

Thus, the thrust of Section 4211 is to alleviate the problems of the collecting bank in accepting in settlement various types of remittances. It was not designed to require a collecting bank to accept any one or all mentioned forms of remittances in settlement of items. Collecting banks *may*, with legal safety, accept any one of the mentioned forms. Whether they *will* accept a given form is a different issue, one to which the amended Regulation J is directed.

■ Thus, neither the time of settlement nor the manner of settlement provisions of Regulation J are contrary to California law.

### III.

#### Federal Law

Finally, we turn to a consideration of whether the regulation is within the scope of authority conferred on the Board by the Federal Reserve Act. Appellants strongly contend that it is not.

The critical statutory provision dealing with the Federal Reserve's role in the check collection process is 12 U.S.C. § 342, which provides:

Any Federal reserve bank may receive from any of its member banks . . . checks, and drafts, payable upon presentation, and also, for collection, maturing notes and bills; or solely for purposes of exchange or of collection, may receive from other Federal reserve banks deposits of . . . checks upon other Federal reserve banks, and checks and drafts, payable upon presentation within its district . . . ; or, solely for the purposes of exchange or of collection, may receive from any nonmember bank or trust company deposits of . . . checks and drafts payable upon presentation . . . ; *Provided,* such nonmember bank or trust company maintains with the Federal reserve bank of its district a balance sufficient to offset the items in trans-

---

13. *See generally* New York Law Rev. Comm'n, *supra* at 1355.

it held for its account by the Federal reserve bank; . . . .

The authority of Reserve Banks under this section includes the power to collect checks drawn on nonmember banks. *See American Bank and Trust Co. v. Federal Reserve Bank of Atlanta*, 262 U.S. 643, 43 S.Ct. 649, 67 L.Ed. 1153 (1923). The Board is also authorized to promulgate rules and regulations necessary to the performance of its functions. 12 U.S.C. § 248(i). *See also* 12 U.S.C. § 248(*o*).

The appellant State Banks heavily rest their contention on Farmers and Merchants Bank of Monroe v. Federal Reserve Bank of Richmond, 262 U.S. 649, 43 S.Ct. 651, 67 L.Ed. 1157 (1923). The problem in *Farmers and Merchants Bank* arose because of the practice of many nonmember and non-affiliated North Carolina State Banks to charge a fee when presented with a check for collection. This practice, also followed by certain banks in other states, is known as "no par clearance," and the Federal Reserve is prohibited by statute from paying such a fee. 12 U.S.C. § 342. The Federal Reserve attempted to pressure the State Banks into accepting par clearance by presenting checks drawn on banks following no par practices over the counter for settlement in cash. The common law required that over the counter settlements be in cash. To remove this instrument from the hands of the Reserve, North Carolina enacted legislation providing that, unless the drawer indicated by notation on the face of the check that he required payment in cash, the payor bank was at liberty when the check was presented by a Federal Reserve Bank to pay the check by exchange drawn on its reserve deposits. The statute was thus clearly designed "to relieve state banks from the pressure which . . . Federal Reserve banks were in a position to exert and thus compel submission to par clearance." 262 U.S. at 659, 43 S.Ct. at 655.

The Supreme Court sustained the North Carolina statute, and, for purposes of the present controversy, two points resolved in the opinion are significant. First, the Court rejected the Federal Reserve's argument that the state statute impaired the legitimate functions of the Federal Reserve in the area of check collection. The Court reasoned that, since the Act does not require the Federal Reserve to collect checks drawn on banks which follow no par practices, "[n]o duty or right of the Federal Reserve Bank to collect checks is obstructed by the North Carolina statute which merely gives to the drawee bank the right to pay in the customary exchange draft, where its depositor has, by the form used in drawing the check, consented that this be done." 262 U.S. at 664, 43 S.Ct. at 657.

There is nothing in this that supports the appellants. The Court only recognized the right of a state to alter the common law rules relating to bank collections. Here we only recognize the right of the Federal Reserve to promulgate rules with respect to check collections in a manner countenanced by applicable state law. Neither the Federal Reserve here nor North Carolina in *Farmers and Merchants Bank* acted beyond its power.

The Federal Reserve also argued that the North Carolina statute interfered with the duty of the Board to establish a *universal* system of par clearance and check collection. There can be little question that, if the Federal Reserve correctly perceived its role, the state statute would have been a serious impediment to the exercise of its responsibilities. The Court, however, flatly rejected the argument that the Federal Reserve Board was charged with the responsibility of establishing universal par clearance and collection of checks.

> Congress did not in terms confer upon the Federal Reserve Board or the federal reserve banks a duty to establish universal par clearance and collection of checks; and there is nothing in the original act or in any amendment from which such duty to compel its adoption may be inferred.
>
> 262 U.S. at 664, 43 S.Ct. at 657.

Since the amendments to Regulation J do not, in our view, represent an attempt to establish a universal system of check clearance, appellants' reliance on *Farmers and Merchants Bank* is misplaced. Because the State Banks are not required to use Federal Reserve routing numbers on their checks, and because alternatives exist to the use of such numbers, the system must be characterized as essentially voluntary. Under such circumstances, the amendments to Regulation J cannot be viewed as an attempt by the Board to establish a universal system of check collection. If the amended Regulation J proves too onerous to the State Banks, they are free to remove themselves from the system.[14]

The amendments to Regulation J are both consistent with California law and within the power conferred on the Board by the Federal Reserve Act. The judgment of the district court is, therefore, affirmed.

14. *Compare* American Bank & Trust Co. v. Federal Reserve Bank, 262 U.S. 643, 648, 43 S.Ct. 649, 651, 67 L.Ed. 1153 (1923): Country Banks are not entitled to protection against legitimate competition. Their loss here shown is of the kind to which business concerns are commonly subjected when improved facilities are introduced by others, or a more efficient competitor enters the field. It is *damnum absque injuria.*