## BROOKINGS STATE BANK v. FEDERAL RESERVE BANK OF SAN FRANCISCO.

(District Court, D. Oregon. June 26, 1922.)

1. **Banks and banking ⬅288½, New, vol. IIA Key-No. Series—Reserve Bank not required to receive for collection checks from nonclearing banks: "may."**

    Federal Reserve Act, § 13, as amended by Act June 21, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 9796), providing that any Reserve Bank may receive for exchange or collection checks, notes, bills, etc., gives to the Reserve Banks an option to receive such checks on whatsoever bank drawn, within its district, without discrimination as to whether they are members or nonmembers, or have availed themselves of the clearing house privileges afforded by the Reserve Bank; but the word "may" is not to be construed as "shall," so as to be mandatory, and the requirement of section 16 of the act (section 9799) that the banks receive from member banks or Federal Reserve Banks checks and drafts drawn on their depositors, carries with it no specific power for making exchange or collections.

    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, May.]

2. **Banks and banking ⬅288½, New, vol. IIA Key-No. Series—Reserve Bank has option to collect from nonclearing bank, if it can do so without paying exchange.**

    A Federal Reserve Bank may at its option receive and collect paper against a bank which is not a member, and which has not availed itself of

the reserve clearing privileges, if it can find a way to make such collections without the payment of exchange, which it is prohibited from paying by the proviso to Federal Reserve Act, § 13, as amended by Act of June 21, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 9796).

3. **Banks and banking** ⊂⟹288½, New, vol. IIA Key-No. Series—**Nonmember banks can charge reasonable exchange on remittances.**

Banks which are not members of the Federal Reserve system, and not governed by the Federal Reserve Act (Comp. St. § 9785 et seq.), have the right, if they see fit, to charge reasonable exchange on remittances.

4. **Banks and banking** ⊂⟹288½, New, vol. IIA Key-No. Series—**Reserve Bank cannot coerce nonmember bank to remit without exchange.**

Though a bank which is not a member of the Federal Reserve system may, if it sees fit to do so, waive its right to charge exchange on remittances by it, the Federal Reserve Bank has no right to coerce it to do so.

5. **Banks and banking** ⊂⟹288½, New, vol. IIA Key-No. Series—**Evidence held to show coercion by Reserve Bank to compel remittances without exchange.**

In a suit for injunction against the Federal Reserve Bank by a nonmember state bank, evidence *held* to show that the Federal Reserve Bank had attempted to coerce the state bank to make remittances without exchange, by presenting checks for payment at the counter which required the bank to keep an unusually large reserve of currency, and by returning checks on which the state bank had refused to make remittance, because they were indorsed to be paid at par to the Reserve Bank's correspondent, with information they had been dishonored without protest by the state bank.

6. **Injunction** ⊂⟹163(5)—**Not issued against practice discontinued without intention to renew.**

Where, about the time suit was begun against it, a Federal Reserve Bank had discontinued its agency for presentation across the counter of checks on a nonmember state bank, and there was no evidence it had any intention to renew such agency, a temporary injunction restraining it from maintaining an agent will not be continued.

7. **Banks and banking** ⊂⟹288½, New, vol. IIA Key-No. Series—**Reserve Bank enjoined from notifying correspondents that state bank had dishonored without protest.**

Where a federal bank sent checks to the state bank on which they were drawn, indorsed as "for collection only and remittance in full without deduction for exchange or collection charges," and the state bank was not required to remit without charge, the practice of the Reserve Bank in returning such checks to its correspondents with information they had been dishonored without protest by the state bank, and that the correspondents must look to that bank for redress, was erroneous coercion of the state bank, which will be enjoined.

In Equity. Suit by the Brookings State Bank, an Oregon banking corporation, against the Federal Reserve Bank of San Francisco. Preliminary injunction, decreed against defendant, made permanent.

See, also, 277 Fed. 430.

The Brookings State Bank, the plaintiff herein, is an Oregon corporation, with a capital stock of $15,000, and is engaged in the banking business at Brookings, a small town in the extreme southwestern part of the state, in Curry county. The town is without express facilities. The bank has correspondents at San Francisco, Cal., and Portland, Or. In making remittances, it has heretofore exacted an exchange charge of one-tenth of 1 per cent. The defendant, Federal Reserve Bank of San Francisco, exercising its function as a collecting and clearing house agency, and desiring to make collections from the Brookings Bank, requested payment at par, as it is prohibited by the Federal Reserve Act from paying exchange. This was refused by the Brookings

⊂⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Bank. With the view, therefore, of making such collections without the necessity of paying exchange, the Reserve Bank maintained an agent at Brookings for making collection over the counter of such paper as might be transmitted to him through cash letters from the Reserve Bank and its branch bank at Portland. The agent was so maintained for the space of about a year, and he collected over the counter during the time something above $108,-000, at an expense to the Reserve Bank of $3,542, which includes the expense of transmitting the currency to point of destination. The method caused the Brookings Bank much annoyance, and required it to maintain a materially larger reserve than ordinarily would have been necessary in the usual conduct of its business.

The agent was finally withdrawn, and the Brookings Bank was notified that thereafter checks would be forwarded for collection by mail direct to the bank, with request that they be paid at par and the proceeds remitted by exchange on Portland or San Francisco. Checks were so forwarded, indorsed "Pay to Brookings State Bank for collection only and remittance in full, without deduction for exchange or collection charges," but were returned without payment, on the ground that the bank was not called upon to act as agent for the Reserve Bank to make such collections under the terms imposed. The Reserve Bank, upon the return of the checks, returned them to its correspondents, advising them in effect that the Brookings Bank refused to pay and had not protested the paper, and that they must look to the Brookings Bank for their protection.

A preliminary injunction issued, after hearing, restraining the Reserve Bank from sending letters to its clients advising them that they must look to the Brookings Bank for their protection through failure to protest such paper, as demand for payment was made upon it on condition that it remit at par.

T. T. Bennett, of Marshfield, Or., for plaintiff.

Albert C. Agnew, of San Francisco, Cal., and Wood, Montague & Matthiessen, of Portland, Or., for defendant.

WOLVERTON, District Judge (after stating the facts as above). The Federal Reserve Bank is empowered by the Federal Reserve Act (Comp. St. § 9785 et seq.), by authority of which it is permitted to incorporate and transact business, to exercise all powers specifically granted by the provisions of the act, and such incidental powers as shall be necessary to carry on the business of banking within the limitations prescribed by the act. Subdivision 7, § 4 (section 9788).

By section 13, as amended by the Act of June 21, 1917 (40 Stat. 235 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 9796]), it is provided that any Reserve Bank may receive from any of its member banks deposits of current funds in lawful money, or checks and drafts payable upon presentation, and also, for collection, maturing notes and bills, or, solely for the purposes of exchange or of collection, may receive deposits of checks and drafts, payable upon presentation within its district, and maturing notes and bills payable therein, or; solely for the purposes of exchange or of collection, may receive from any nonmember bank or trust company deposits of current funds in lawful money, national bank notes, Federal Reserve notes, checks and drafts payable upon presentation, or maturing notes and bills: Provided, however, that such nonmember bank or trust company maintains with the Federal Reserve Bank of its district a balance sufficient to offset the items in transit held for its account by the Federal Reserve Bank; and "provided, further, that nothing in this or any other sec-

tion of this act shall be construed as prohibiting a member or nonmem-. ber bank from making reasonable charges, to be determined and regu-lated by the Federal Reserve Board, but in no case to exceed 10 cents per $100 or fraction thereof, based on the total of checks and drafts presented at any one time, for collection or payment of checks and drafts and remission therefor by exchange or otherwise; but no such charges shall be made against the Federal Reserve banks."

By section 16 (section 9799), the Federal Reserve Board is empower-ed at its discretion to exercise the functions of a clearing house for Federal Reserve Banks, or it may designate a Federal Reserve Bank to exercise such functions, and may also require such bank to exercise the functions of a clearing house for its member banks. By a previous clause of this section, it is provided that every Federal Reserve Bank shall receive on deposit at par from member banks or from Federal Reserve Banks checks and drafts drawn upon any of its depositors, and, when remitted by a Federal Reserve bank, checks and drafts drawn by any depositor in any other Federal Reserve Bank or member bank upon funds to the credit of said depositor in said Reserve Bank or member bank.

[1] The language of the statute is that the Reserve Banks may re-ceive from nonmember banks checks and drafts payable upon pre-sentation, and this solely for the purpose of exchange or of collection; but this is on condition that the nonmember bank shall, of its own volition, maintain with the Reserve Bank the appropriate balance as prescribed. In this way, nonmember banks can avail themselves of the clearing house privileges afforded by the Reserve Bank. Otherwise it would seem that nonmember banks are not affected by the act. 31 Opinions of Attorneys General, 245. But the preceding clause gives broader scope to the powers of the Reserve Bank. It may receive on deposit, for the purpose of exchange or of collection, "checks and drafts, payable upon presentation within its district." This would seem to comprise all checks and drafts, upon whatsoever bank drawn, within its district, without discrimination as to whether member or nonmember. The use of the word "may" is indicative of a legislative intendment to concede an optional function only. There is no particu-lar reason assignable why the word should be construed as "shall," or mandatory in its signification.

The clause of section 16 requiring Reserve Banks to receive at par on deposit from member banks, or from Federal Reserve Banks, checks and drafts drawn upon their depositors, carries with it no spe-cific power for making exchange or collections. The function so to be exercised is treated of in section 13. The Reserve Bank having such paper on deposit, however, may be treated as the holder or owner of such paper. The Federal Reserve Board, apparently recognizing that nonmember banks, unless they voluntarily maintained with the reserve bank the appropriate balance, were not otherwise affected by the act, issued a regulation under title "Check Clearing and Collection," as follows:

"Each Federal Reserve Bank will receive at par from its member banks, and from nonmember banks in its district which have become clearing mem-

bers, checks drawn on all member and clearing member banks and on all other nonmember banks which agree to remit at par through the Federal Reserve Bank of their district."

This was in pursuance of a policy inaugurated by the board to induce nonmember banks which are without the pale of the act to remit at par, and thus to unify bank clearances and collections throughout the country. The questions presented here are: First, whether the Reserve Bank has the authority to make collections from nonmember banks; and, second, whether it can coerce such banks to agree to remit at par.

[2] As to the first, it is already apparent that the Reserve Bank may at its option receive paper against such banks for collection. Having that power, it may collect it, if it can find a way of doing so without the payment of exchange, which it is prohibited from paying by the act. It is a banking custom, as well as a legal right, which a holder of a check has at all times, to present paper at the counter of the payee bank and demand payment, and, if denied, the paper is subject to dishonor. Paper so presented and paid over the counter is not subject to exchange. It is also a custom among banks, in making collections from other banks, where there is not more than one bank in a place, to send checks to the drawee bank with request for remittance, and the request is honored unless there is some special reason why the bank should not pay. These banking rules and regulations are conceded.

[3, 4] As to the second question, the nonmember banks, being without the pale of the Federal Reserve Act, have the right, if they see fit, to charge reasonable exchange on remittances. This is a right the bank may relinquish at its option, but it ought not to be coerced into doing so, or agreeing to do so, and any strategy which has for its purpose the coercion of such nonmember bank to yield its legal right in this respect is unlawful, and will not be approved by the courts. The Supreme Court, speaking through Mr. Justice Holmes, has put the stamp of its disapproval upon the act of a party massing a number of checks against a bank and presenting them in bulk at the counter for payment, although the holder of paper has the legal right to demand payment, on the ground that it evidences an ulterior purpose of compelling the bank to yield against its will to a demand for payment at par. American Bank & Trust Co. et al. v. Federal Reserve Bank, 256 U. S. 350, 41 Sup. Ct. 499, 65 L. Ed. 983. In the opinion the distinguished jurist has this to say:

"If this were a case of competition in private business, it would be hard to admit the justification of self-interest, considering the now current opinion as to public policy expressed in statutes and decisions. But this is not a private business. The policy of the Federal Reserve Banks is governed by the policy of the United States with regard to them and to these relatively feeble competitors. We do not need aid from the debates upon the statute under which the Reserve Banks exist to assume that the United States did not intend by that statute to sanction this sort of warfare upon legitimate creations of the states."

[5] The testimony here impels me to the conclusion that the Federal Reserve Bank has gone to the length of endeavoring to coerce the Brookings Bank to accede to its demand that the latter bank agree to remit at par. Its purpose is obvious, from the fact that it maintained

an agent at Brookings for practically a year, at an expense to it of $3,-542, for collecting over the counter checks and drafts drawn upon the Brookings Bank, knowing at the time that the procedure was embarrassing to the bank, and required it to maintain a much larger reserve in its coffers to take care of its current business, thus depriving the bank of a portion of its ordinary earnings. Such a purpose is further manifest from correspondence found in the record. One letter to which I refer is Defendant's Exhibit S, from the manager of the Portland branch to an officer of the Reserve Bank at San Francisco. It relates to an incident of the acceptance by the agent at Brookings of the bank's draft at par in payment of checks presented over the counter, and advises that:'

"If we continue to accept exchange, we are, of course, extracting the sting from our direct collections."

Another is Plaintiff's Exhibit 20, a letter from the manager at Portland to the Scio State Bank, advising that:

"Shortly, after all the banks in the country have had time to consider becoming par voluntarily, it will be necessary to use more forcible methods with the few banks that refuse to pay their checks at par."

Corroboration is found in other correspondence and evidence adduced at the trial, but the record is too voluminous to attempt to particularize.

[6] But with all this it appears that the Brookings State Bank was advised by letter of September 20, 1921, that the agent at Brookings would be withdrawn on September 30th, and the agent was so withdrawn, and has not since been maintained there, and, as this suit was instituted on September 29, 1921, there would seem to be no necessity for enjoining the defendant from maintaining an agent at Brookings for making collections over the counter of the bank, whether absolutely or in modified terms. Nor would it have been necessary to go into these matters to the extent we have, but for the earnest insistence that it was the defendant's absolute duty, imposed upon it by the act, and as to which it had no volition, to make such collections. The Federal Reserve Bank, however, has recognized the optional character of its function in this regard, by notifying its correspondents that it will accept no more paper on the Brookings State Bank for collection.

[7] As it relates to the method adopted by the defendant for making collections through the mail, by sending checks and drafts drawn upon the Brookings Bank direct to the bank, indorsed, "Pay to Brookings State Bank, for collection only and remittance in full, without deduction for exchange or collection charges," it is plain that the bank was not called upon so to remit, and its return of the checks without payment as demanded was not tantamount to dishonor. I repeat what was said in deciding the matter on preliminary hearing:

"While, under the prevailing custom, the defendant bank could rightfully remit checks and drafts drawn against the plaintiff bank direct to the latter for collection, and could thereby exact payment of them, it could not impose conditions upon which such payment should be made; much less could it make the plaintiff bank its agent for causing protest to be made for nonpayment. The idea of requiring that a maker or drawee shall have protested his

own paper is so inconsistent with the functions of an agent that it can hardly receive the sanction of law. No man can serve two masters, especially himself and another."

The defendant was therefore not authorized to advise its clients that they must look to the plaintiff bank for protection through failure to protest. The preliminary injunction heretofore decreed will be made permanent, but no injunction will issue respecting the maintenance of an agent at Brookings, as such agent had been withdrawn practically at the time of the institution of the suit, and there appears to be no intention upon the part of defendant to replace him.