FERGUS COUNTY ET AL., RESPONDENTS, *v.* FEDERAL RE-
SERVE BANK OF MINNEAPOLIS, APPELLANT.

(No. 5,873.)

(Submitted March 1, 1926.   Decided March 13, 1926.)

[244 Pac. 883.]

*Banks and Banking—Federal Reserve Bank—Acting as Col-
lecting Agent or Clearing-house—Duties and Powers.*

Banks and Banking—Deposit of Check for Collection—Bank may Em-
ploy Subagent.
　1.  One depositing a check for collection thereby authorizes the
bank to employ a subagent to perform the actual service of mak-
ing the collection and to that end to enter into the necessary
contract with the subagent for the service to be performed, and
becomes bound by such contract to the same extent as the collect-
ing bank is bound.

Same—Bank may Send Check Deposited for Collection Directly to Bank
on Which Drawn.
　2.  Under section 6108, Revised Codes of 1921, a bank may send
a check deposited with it for collection, directly to the bank upon
which it is drawn.

Same—Federal Reserve Bank—Acting as Collecting Agent or Clearing-
house—Duties and Powers.
　3.  In an action to recover on checks deposited with a federal re-
serve member bank for collection, by it sent to the federal reserve
branch bank which forwarded them to a nonmember bank upon
which they were drawn, the branch bank accepting in payment a
draft which was dishonored because of the failure of the bank
issuing it, the action being brought on 'the theory that the branch
bank was unauthorized to accept the draft, *held*, that the Reserve
Bank Act does not make it the absolute duty of the reserve bank to
receive checks on nonmember banks for collection nor compel it
to act as a clearing-house for its member banks, but permits it

to do so in its discretion, and that therefore it could, as it did, impose as a condition to its acting in either capacity, the right to accept a draft from the bank on which the checks were drawn.

Same—Federal Reserve Board—Power to Make Rules and Regulations.
4. The federal reserve board has authority to make any lawful rules and regulations for the conduct of the business carried on by a federal reserve bank in its capacity as a clearing-house or collecting agent, and the depositor of a check with a member bank which sends it to a reserve branch bank for collection is bound by such rules and regulations.

Same—Federal Reserve Bank—Right to Accept Drafts for Checks Deposited for Collection—Public Policy.
5. The condition attached by the federal reserve bank to its acting as a collection agent giving it the right to accept drafts in payment of checks received by it for collection, *held* not against public policy.

Same—Federal Reserve Bank—Member Banks not Coerced to Employ Federal Branch Bank for Collection of Checks.
6. In the absence of any showing by pleading or proof in support of the contention that a member bank is compelled to send checks received by it to a federal reserve branch bank for collection and that therefore in employing it as its subagent the essential element of a contract—consent freely given—is absent and the contract void, the assertion cannot be sustained, the mere fact that member banks are required to maintain a certain minimum reserve with the reserve bank and are subject to penalties for any impairment of reserve alone being insufficient to show compulsion.

Same—Federal Reserve Bank—Acceptance of Draft from Insolvent Bank—When not Liable to Owner of Checks Sent for Collection.
7. While the federal reserve bank in accepting through one of its branch banks a draft from a nonmember bank in payment of checks sent to the latter for collection may be liable to the owner of the checks if the draft is accepted with knowledge that the bank sending it is insolvent, its suspension after the issuance of the draft and before it could be collected is not alone sufficient to fasten such liability upon it, since the issuing bank may have been solvent at the time the draft was sent.

---

[1] Banks and Banking, 7 C. J., sec. 260, p. 606, n. 86 New; sec. 268, p. 611, n. 17 New; sec. 1020, p. 900, n. 23; sec. 1037, p. 901, n. 41; sec. 1049, p. 902, n. 58; sec. 1119, p. 910, n. 40, 40 New.

[3] Banks and Banking, 7 C. J., sec. 1119, p. 910, n. 40 New.

[4] Banks and Banking, 7 C. J., sec. 1050, p. 902, n. 57; sec. 1119, p. 910, n. 40 New.

[5] Banks and Banking, 7 C. J., sec. 1119, p. 910, n. 40 New.

[6] Banks and Banking, 7 C. J., sec. 1119, p. 910, n. 40 New. Evidence, 23 C. J., sec. 1817, p. 65, n. 24 New.

[7] Banks and Banking, 7 C. J., sec. 1119, p. 910, n. 40 New. Pleading, 31 Cyc., p. 193, n. 30.

*Appeal from District Court, Fergus County; Edgar J. Baker, Judge.*

ACTION by Fergus County, a municipal corporation, by and through its Board of County Commissioners, John Quickenden

and others, against the Federal Reserve Bank of Minneapolis, a corporation of the United States (Helena Branch). Judgment for plaintiffs and defendant appeals. Reversed and remanded.

*Mr. Harry P. Bennett, Mr. T. B. Weir* and *Messrs. Ueland & Ueland,* of the Bar of Minneapolis, Minnesota, of Counsel, for Appellant, submitted a brief; *Mr. Weir* and *Mr. A. Ueland* argued the cause orally.

*Messrs. Belden & DeKalb, Mr. Merle C. Groene* and *Mr. Enor K. Matson,* for Respondents, submitted a brief; *Mr. H. Leonard DeKalb* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

At the times mentioned herein, the First State Bank of Coffee Creek (called the Coffee Creek bank) was a state bank which was not affiliated with the Federal Reserve System in any manner, so far as disclosed by the record. The Empire & State Bank of Lewistown (called the Lewistown bank) was also a state bank, but it was a component part of the Federal Reserve System —a member bank of the Federal Reserve Bank of Minneapolis (herein called the defendant). About December 1, 1923, certain persons who were indebted to Fergus county delivered to the county treasurer checks drawn on the Coffee Creek bank. These checks, for sums aggregating $999.64, were indorsed by the treasurer and were delivered to the Lewistown bank for collection. The Lewistown bank indorsed and delivered them to the defendant's Helena branch bank for collection, and the Helena branch bank transmitted the checks to the Coffee Creek bank for payment. The Coffee Creek bank charged the checks to the respective drawers and remitted its drafts for the amount of the checks. These drafts, drawn upon the Coffee Creek bank's correspondents, were received by the defendant, but before they could be collected the Coffee Creek bank failed

in business, and the drafts were dishonored. This action ·was then instituted by the county to recover the amount of the checks, together with the interest which the county would have received on that amount if the checks had been collected. It is the plaintiff's theory that the defendant rendered itself liable for the resulting loss by accepting drafts for the checks instead of demanding and collecting the money.

Every material allegation of the complaint was admitted, and the defendant then undertook to justify its act in accepting the drafts. It alleged that about October 6, 1920, the Federal Reserve Board adopted and promulgated certain rules designated in the entirety, "Regulation J, Series of 1920"; that about September 1, 1922, this defendant, with the consent and approval of the Federal Reserve Board, adopted certain other rules and promulgated them in their entirety as "Circular No. 286"; that the Lewistown bank had full notice and knowledge of the contents of these documents at and for a long period prior to the time the checks in question were delivered to the defendant, and that defendant accepted the checks for collection under the terms and conditions imposed by Regulation J and Circular 286, and not otherwise. Each of these documents is attached to and made a part of the answer. The portions of Regulation J material here read as follows:

"Each federal reserve bank shall exercise the functions of a clearing-house under the following general terms and conditions:

"(1) Each federal reserve bank will receive at par from its member banks and from nonmember clearing banks in its district, checks drawn on all member and nonmember clearing banks and on all other nonmember banks which agree to remit at par through the federal reserve bank of their district. * * *

"(8) In handling items for member and nonmember clearing banks, a federal reserve bank will act as agent only. * * * Any further requirements that the board may deem necessary will be set forth by the federal reserve banks in their

letters of instruction to their member and nonmember clearing banks. Each federal reserve bank will also promulgate rules and regulations governing the details of its operations as a clearing-house, such rules and regulations to be binding upon all member and nonmember banks which are clearing through the federal reserve bank.''

The only provision of Circular No. 286 with which we are concerned at present reads as follows:

''Every bank sending checks to this [defendant] bank * * * will be understood to have agreed to the terms and conditions of this circular, and to have agreed that in receiving such items this bank will act only as the collecting agent of the sending bank, and as such, authorized to send such items for payment in cash or bank draft direct to the bank on which they are drawn.''

A general demurrer to the answer was sustained, and the defendant, declining to plead further, suffered judgment to be rendered and entered against it and appealed.

The ultimate question for solution is, Does the answer state a defense to plaintiff's cause of action? or, stating the same proposition in different terms: Do the provisions of Regulation J and Circular 286 bind the plaintiff and relieve the defendant of liability for the loss which resulted from its act in accepting the drafts of the Coffee Creek bank in payment for the checks it undertook to collect? If they do, the trial court erred in sustaining the demurrer; if they do not, then this case is controlled by the decision in *Federal Reserve Bank of Richmond* v. *Malloy,* 264 U. S. 160, 68 L. Ed. 617, 31 A. L. R. 1261, 44 Sup. Ct. Rep. 296, and the decision in *Jensen* v. *Laurel Meat Co.,* 71 Mont. 582, 230 Pac. 1081.

The Federal Reserve Act (38 Stat. 251 [secs. 9785–9805, U. S. Comp. Stats. 1916]), and the Acts amendatory thereof and supplementary thereto, constitute the charter of the Federal Reserve System. The general supervision and control of the system is lodged in the federal reserve board, consisting of six members appointed by the President of the United

States, by and with the advice and consent of the Senate and the Secretary of the Treasury and the Comptroller of the Currency, members *ex officio.* (Amendment of June 3, 1922, 42 Stats. 620; sec. 9793, U. S. Comp. Stats. 1923 Supplement.) It was this board which promulgated Regulation J and authorized the defendant to issue Circular No. 286.

The opening paragraph of Regulation J, quoted above, is an order of the federal reserve board constituting each federal reserve bank a clearing-house for its member banks and non-member clearing banks. By the provisions of that Regulation, member banks were informed that, in handling checks and drafts for collection, each federal reserve bank would act as agent only, and would exercise the functions of a clearing-house under such rules and regulations as it might adopt. Regulation J assumed to confer upon this defendant the authority to adopt and promulgate the rules and regulations contained in Circular 286. However, it is alleged in the answer, and admitted to be true for the purposes of this appeal, that Circular 286 was issued with the consent and approval of the federal reserve board, so that in effect it emanated from that board, and its validity depends upon the power of that board to prescribe the conditions contained in the circular. If the federal reserve board had authority to impose those conditions, then this defendant had authority to say that it would act as a clearing-house and collect checks for member banks on the terms and conditions prescribed in the circular and not otherwise.

Circular 286 constituted a continuing offer by this defend-
[1, 2] ant to perform the services of a collecting agent for the Lewistown bank upon the conditions therein expressed, (1) that defendant might send the items for collection directly to the bank upon which they were drawn, and (2) that it might receive "payment in cash or bank draft."

When the county deposited the checks with the Lewistown bank for collection, it thereby authorized that bank to employ a subagent to perform the actual service of making the collec-

tion (*Jensen* v. *Laurel Meat Co.*, above), and to that end to enter into the necessary contract with the subagent for the service to be performed.

When the Lewistown bank, with full knowledge of the conditions imposed by Circular 286, delivered the checks to this defendant for collection, it thereby expressed its acceptance of the offer as made, and the result was a contract by the terms of which the defendant was authorized to send the checks directly to the Coffee Creek bank and to accept in payment "cash or bank draft"; and, when that contract was entered into, defendant became the subagent for the county, and the county became bound by the contract to the same extent that the Lewistown bank was bound.

It is conceded that the first condition mentioned above is not objectionable, and necessarily so, for it is authorized expressly by section 6108, Revised Codes of 1921. But it is contended that neither this defendant, nor the federal reserve board, had power lawfully to require that defendant would accept checks for collection only on condition that it might receive either drafts or cash in payment therefor. In other words, plaintiff's counsel argue that the Federal Reserve Act imposed upon [3] this defendant the absolute duty to receive these checks for collection and to collect them, and therefore it was beyond the power of the defendant or the federal reserve board to say that defendant would perform its public duty only upon condition that it be relieved from the liability which would otherwise attach to its act in accepting drafts in payment of the checks. In support of this argument attention is directed to sections 13 and 16 of the Federal Reserve Act (secs. 9796 and 9799, U. S. Comp. Stats. 1918, as amended, U. S. Comp. Stats. 1925 Supp).

Section 13, as amended, provides: "Any federal reserve bank may receive from any of its member banks, and from the United States, deposits of current funds in lawful money, national bank notes, federal reserve notes or checks, and drafts payable upon presentation, and also, for collection, maturing

notes and bills.''   (40 Stat. 232, 234, 235 (U. S. Comp. Stats. 1918, U. S. Comp. Stats. Supp. 1925, sec. 9796.)   This section so far as it is involved here, merely authorizes a federal reserve bank to receive from its member banks checks and drafts for collection.   (*American Bank & Trust Co.* v. *Federal Reserve Bank of Atlanta,* 262 U. S. 643, 67 L. Ed. 1153, 43 Sup. Ct. Rep. 649.)

Section 16 provides: ''Every federal reserve bank shall receive on deposit at par from member banks or from federal reserve banks checks and drafts drawn upon any of its depositors.''

That these provisions did not compel the defendant to receive the checks or to collect them is reasonably clear from the language employed.   But all discussion of the subject has been set at rest by the supreme court of the United States in *Farmers & Merchants' Bank* v. *Federal Reserve Bank of Richmond,* 262 U. S. 649, 30 A. L. R. 635, 67 L. Ed. 1157, 43 Sup. Ct. Rep. 651.   With reference to the duty of a federal reserve bank to collect checks for member banks, the court said: ''But neither section 13, nor any other provision of the Federal Reserve Act, imposes upon reserve banks any obligation to receive checks for collection.   The Act merely confers authority to do so.''   In passing upon the language employed in the opening paragraph of section 16, quoted above, the court observed: ''The depositors in a federal reserve bank are the United States, other federal reserve banks, and member banks. It is checks on these depositors which are to be received by the federal reserve banks.   These checks from these depositors the federal reserve banks must receive.   And when received they must be taken at par.   There is no mention of nonmember banks in this section.   When, in 1916, section 13 was amended to permit federal reserve banks to receive from member banks solely for collection other checks payable upon presentation within the district, and when, in 1917, section 13 was again amended to permit such receipt solely for collection also from certain nonmember banks, section 16 was left in this re-

spect unchanged. In other respects section 16 was amended both by the Act of 1916 and by the Act of 1917. The natural explanation of the omission to amend the provision in section 16 concerning clearance is that the section has no application to nonmember banks, even if affiliated.''

The checks here in question were drawn upon the Coffee Creek bank, which was not a member bank nor affiliated with the Federal Reserve System in any manner; therefore, under the provisions of section 16 quoted above, the defendant was not compelled to receive them even for deposit.

But it is insisted that defendant was compelled to act as a clearing-house for its member banks, including the Lewistown bank. The only provision of the Federal Reserve Act relating to this subject, so far as we have observed, is to be found in the concluding paragraph of section 16, as follows: ''The federal reserve board shall make and promulgate from time to time regulations governing the transfer of funds and charges therefor among federal reserve banks and their branches, and may at its discretion exercise the functions of a clearing-house for such federal reserve banks, or may designate a federal reserve bank to exercise such functions, and may also require each such bank to exercise the functions of a clearing-house for its member banks.''

This language appears to be explicit. It provides that the federal reserve board *may* require each federal reserve bank ''to exercise the functions of a clearing-house for its member banks.'' If the language of section 13 above is merely permissive, and not mandatory, as held by the supreme court, this language of the concluding paragraph of section 16 is likewise permissive, and not mandatory. In other words, while the federal reserve board *may* require a federal reserve bank to act as a clearing-house for its member banks, it is not compelled to make such requirement. It might have refused altogether to constitute this defendant a clearing-house; and, in the absence of an order from the federal reserve board directing it to function as a clearing-house, this defendant might

have refused to undertake any service with respect to these checks. It was compelled to function as a clearing-house only in virtue of the order of the federal reserve board directing it to do so upon the terms and conditions mentioned in Regulation J and Circular 286.

Since the federal reserve board was permitted, but was not compelled, to require this defendant to function as a clearing-house, it could prescribe the terms upon which the service should be rendered when undertaken.

Section 11 of the Federal Reserve Act defines generally the powers and duties of the federal reserve board. Section 11(i) [4] provides: "Said board shall perform the duties, functions, or services specified in this Act, and make all rules and regulations necessary to enable said board effectively to perform the same." Section 11(j) provides that the federal reserve board shall "exercise general supervision over said federal reserve banks." These provisions furnish ample authority to the federal reserve board to make any lawful rules and regulations for the conduct of the business carried on by a federal reserve bank in its capacity as a clearing-house or collecting agent; and, since the rules prescribed in Regulation J and Circular 286 are not unlawful, this plaintiff is bound by them so far as they affect the instant case.

The contention made, that it is against public policy to permit [5] this defendant to contract against liability for accepting drafts in payment of checks received by it for collection, cannot be sustained. In this jurisdiction even a public service corporation may contract against liability for its own negligence, under certain circumstances. (*Nelson* v. *Great Northern Ry. Co.*, 28 Mont. 297, 321, 72 Pac. 642; *John* v. *Northern Pacific Ry. Co.*, 42 Mont. 18, 35, 32 L. R. A. (n. s.) 85, 111 Pac. 632.)

In their brief, counsel for plaintiff say: "Only in cases where a person or corporation can refuse to perform a service can it dictate the terms under which it will perform the service." For the purposes of this appeal, that statement may

be accepted as substantially correct, but it does not aid the plaintiff, and no useful purpose would be served by discussing the public character of the service rendered by the Federal Reserve System. It is settled by the decision in *Farmers & Merchants' Bank* v. *Federal Reserve Bank of Richmond,* above, that this defendant was not compelled by the Federal Reserve Act to collect the checks in question. "It is a fundamental rule of law, however, that what one may refuse to do entirely he may agree to do on such terms as he pleases. Hence, one person, being under no legal duty to perform certain services for another, may, upon agreeing to perform such services, exempt himself from liability for his own negligence, providing   *   *   *   there is no attempt to exempt himself from responsibility from any fraud or willful injury to the other person or his property, or to exempt himself from responsibility from any violation of the law, either willful or negligent." (6 Cal. Jur. 117; see, also, sec. 7554, Rev. Codes 1921.)

It is argued by counsel for plaintiff, though it is not pleaded in the complaint, that the Lewistown bank was compelled to [6]   send the checks in question to the defendant for collection, and therefore the contract lacks the essential element— consent given freely.   If it be a fact, as suggested in argument, that the Lewistown bank was not free to collect the checks directly from the Coffee Creek bank or through any agency other than the defendant, and that it was coerced into accepting the offer, such fact is not one of which this court can take judicial notice.   (Sec. 10532, Rev. Codes 1921.)   It is true that every member bank is required by section 19 of the Federal Reserve Act to maintain with the federal reserve bank of the district a certain designated minimum reserve, and is subject to severe penalties for any impairment of that reserve; but this court cannot say that those requirements furnish the means by which this defendant could or did coerce the Lewistown bank to make all collections through the Helena branch bank.   This is not such a case as was presented in *American B. & T. Co.* v. *Federal Reserve Bank,* 256 U. S. 350,

65 L. Ed. 983, 41 Sup. Ct. Rep. 499, or in *Brookings State Bank* v. *Federal Reserve Bank* (D. C.), 281 Fed. 222.

Again, it is suggested that, assuming the validity of Circu[7] lar 286, the provision therein that a federal reserve bank receiving checks for collection may accept bank drafts in payment should be construed to mean "that a bank draft is to be received only in those cases where such course could safely be pursued." We are unable to appreciate the force of this suggestion. It may be true that, if a federal reserve bank, undertaking to collect checks drawn upon a nonmember and nonclearing bank, accepted drafts on such bank when the bank was known to be insolvent, such federal reserve bank might be liable, notwithstanding the provisions of Regulation J and Circular 286; but that is not this case. There is not a suggestion in the pleading that the Coffee Creek bank was insolvent at the time it transmitted its drafts to the defendant, or, if it were insolvent in fact, that such fact was known or should have been known to the defendant. The mere fact that it suspended business before the drafts were collected does not argue that it was insolvent when the drafts were issued. It does not appear upon what banks the drafts were drawn or what time elapsed after the drafts were received by the defendant before the Coffee Creek bank failed.

It is our conclusion that the contract entered into between the Lewistown bank and this defendant is valid so far as it appears from this record, that that contract is binding upon Fergus county, for whose benefit it was made, and that, in virtue of its provisions, defendant was relieved of liability for accepting the drafts of the Coffee Creek bank. It follows that the answer states a defense, and that the trial court erred in sustaining the demurrer.

Under this view of the case, it is not necessary to consider the second defense pleaded.

We have treated this defendant as subagent for Fergus county in handling these checks for collection and we think

correctly so. It is certain that plaintiff cannot maintain an action against defendant upon this cause of action, upon any other theory, and this is the theory upon which the case of *Federal Reserve Bank of Richmond* v. *Malloy*, above, was predicated, and it is immaterial here that the theory may have been adopted merely to avoid circuity of action.

In the answer, an attempt was made to deny that the checks were delivered to the Lewistown bank for collection, but the pleader ignored the plain provisions of section 9137, Revised Codes of 1921, and the attempted denial is not effective for any purpose.

The judgment is reversed and the cause is remanded for further proceedings.

*Reversed and remanded.*

Mr. Chief Justice Callaway and Associate Justices Galen, Stark and Matthews concur.