**BILLINGS UTILITY CO. v. FEDERAL RESERVE BANK OF MINNEAPOLIS et al.**

No. 667.

District Court, D. Minnesota, Fourth Division.

July 24, 1942.

See, also, 40 F.Supp. 309.

A. E. Bryngelson, of Minneapolis, Minn. (Lloyd W. Swords, of Billings, Mont., of counsel), for plaintiff.

Sigurd Ueland, of Minneapolis, Minn. (Thomas H. Hodgson, of Minneapolis, Minn., of counsel), for defendants.

NORDBYE, District Judge.

The facts are briefly these: Plaintiff seeks to recover some $500,000, with $10,000 attorneys' fees, from the defendant Federal Reserve Bank of Minneapolis on a claim for damages. It is alleged by the plaintiff that it conducted a central heating plant for the production and distribution of heat in the City of Billings, Montana; that in 1936 it required some $35,000 additional working capital for expansion and enlargement of its plant; that it was unable to obtain financial assistance from any usual source and it made application for this amount by way of a loan from the defendant bank; and that the security tendered was not only adequate, but far more than was necessary under the circumstances. It then alleges that the defendant bank "willfully, arbitrarily, capriciously, tyrannically, oppressively, monopolistically, and without good or justifiable reason, refused to make such loan," and avers that, as a direct result of such refusal, it was required to liquidate its holdings and go out of business to its damage in the amount sued for herein.

On December 27, 1940, an action based on the identical facts was brought by the plaintiff against the defendant bank in the United States District Court for the District of Montana. The defendant moved to dismiss upon two grounds in the order indicated; first, because the complaint failed to state a claim upon which relief could be granted; and second, on the ground that the defendant was an inhabitant of the State of Minnesota, and therefore the venue of the action was incorrect. The matter was argued and briefed before the Montana court, and thereafter the motion to dismiss was granted on both grounds. It appears from the decision of that court that Judge Pray ruled that the action should be dismissed because, under the Federal Reserve Act, as amended, the bank was under no obligation to make any loan, and in that the making of loans was discretionary with the bank, no cause of action had been stated; secondly, he ruled that a dismissal must be entered because, under 28 U.S.C.A. § 112, the defendant could only be sued without its consent in the District of Minnesota, where it was an inhabitant. See Billings Utility Co. v. Federal Reserve Bank of Minneapolis, D.C., 40 F.Supp. 309. A judgment of dismissal was entered on both grounds on December 4, 1941, and no appeal has been taken therefrom.

That the judgment of the Montana court is res judicata herein seems free from doubt. Plaintiff, however, urges that the Montana court did not have jurisdiction to hear and determine the merits of the action and therefore any judgment therein on the merits is not a bar to an action on the same issues before this Court. But in this contention plaintiff is clearly in error. The second ground for dismissal asserted in the previous action was bottomed on the theory that the venue was incorrect under Title 28, U.S.C.A. § 112 (Section 51 of the Judicial Code). This statute is merely a venue statute, and where a suit not involving diversity of citizenship is instituted in a Federal court, it must be brought, upon the defendant's objection, in the district where

the defendant is an inhabitant. In that the defendant was an inhabitant of the District of Minnesota, it therefore was privileged to object to the prosecution of this suit in the District of Montana. But that the venue under the statute in question is merely a personal privilege and may be waived is too well established to require the citation of any authorities. Where a general appearance is entered and no claim of the benefit of the statute is made, it would follow that the court is vested with jurisdiction to hear and determine the controversy. Under the old practice, that is, before the adoption of the new Federal Rules, the defendant having first asked for a dismissal of the complaint because no cause of action had been stated, might be deemed to have waived his rights under the venue statute. See United States et al. v. Freeman et al., D.C., 21 F.Supp. 593. However, under the new rules, the question as to whether or not the complaint states a cause of action and whether or not the action is lodged in the proper venue, may be raised in the same motion without waiving the privilege of venue. See Rule 12(b), Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c, which provides: "No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion." In other words, the District Court of Montana could have denied the motion to dismiss on the first ground and could have granted the motion to dismiss because of the wrong venue, and under such circumstances the plaintiff would not have been held to have waived its right to challenge the venue merely because it first attacked the sufficiency of the complaint. But that the Montana court had jurisdiction to pass upon the merits of the complaint seems evident. It was the first ground set forth in the notice of motion, the matter was argued fully and briefed, and the court disposed of that question adversely to the plaintiff and judgment was entered thereon. *The merits, therefore, of the controversy were decided with as much finality as if the venue question had not been urged at all.* It is well recognized that, where a defendant asserts more than one ground for dismissal and the court sustains each separate ground or defense, the adjudication is conclusive as to each objection asserted, even though the matter could have been finally disposed of by a determination of any one of them. This

view is fully sustained by Freeman on Judgments, Fifth Edition, § 770:

"Where there are several defenses, any one of which is sufficient to defeat the action, and the court or jury finds specially in favor of the defendant upon all of them, each becomes res judicata, and the judgment is upon the merits, although some of the defenses are in the nature of pleas in abatement, and go only to defeat the present action. If the defendant is authorized to interpose as many defenses as he has, the Court may properly determine all of them and to the extent that it actually does so, its adjudication is conclusive although a determination of any of them might have been sufficient."

A simple answer to the res judicata question is this: The Montana court had jurisdiction to determine each ground asserted in support of the motion to dismiss. One of these grounds raised the legal sufficiency of plaintiff's complaint and this was determined adversely to plaintiff and judgment entered thereon. No appeal having been taken, the judgment has ripened into a final adjudication of the merits of plaintiff's claim and it cannot now seek to relitigate the same cause of action in this Court.

Not only has this matter been finally disposed of on its merits, but I am convinced that the views of Judge Pray are well-reasoned and must be sustained. The defendant bank is permitted by law to make loans to corporations other than banking institutions and to individual persons. This authority was granted in 1934 when Congress amended the Federal Reserve Act by adding Section 13b thereto. Title 12, U.S.C.A. § 352a. This section reads in part:

"Sec. 13b. (a) In exceptional circumstances, when it appears to the satisfaction of a Federal Reserve bank that an established industrial or commercial business located in its district is unable to obtain requisite financial assistance on a reasonable basis from the usual sources, the Federal Reserve bank, pursuant to authority granted by the Federal Reserve Board, may make loans to, or purchase obligations of, such business, or may make commitments with respect thereto, on a reasonable and sound basis, for the purpose of providing it with working capital, but no obligation shall be acquired or commitment made hereunder with a maturity exceeding five years. * * *

"(d) For the purpose of aiding the Federal Reserve banks in carrying out the provisions of this section, there is hereby established in each Federal Reserve district an industrial advisory committee, to be appointed by the Federal Reserve bank subject to the approval and regulations of the Federal Reserve Board, and to be composed of not less than three nor more than five members as determined by the Federal Reserve Board. Each member of such committee shall be actively engaged in some industrial pursuit within the Federal Reserve district in which the committee is established, and each such member shall serve without compensation but shall be entitled to receive from the Federal Reserve bank of such district his necessary expenses while engaged in the business of the committee, or a per diem allowance in lieu thereof to be fixed by the Federal Reserve Board. Each application for any such loan, advance, purchase, discount, or commitment shall be submitted to the appropriate committee and, after an examination by it of the business with respect to which the application is made, the application shall be transmitted to the Federal Reserve bank, together with the recommendation of the committee."

Plaintiff argues (1) that the statute is mandatory, and that "may" as used therein is not permissive but is mandatory, and that "may" means "must", and (2) that if it should be held that "may" means "may" and therefore discretion is vested in the defendant bank, then, under the complaint herein, it appears that the bank has misused and abused its discretion to the damage of plaintiff.

The first contention may be disposed of without any extended discussion. A reading of the Act, giving due consideration to its context and purposes, dispels any doubt as to the soundness of defendants' position. Moreover, the safeguards to be found in the statute so that loans shall be made only in exceptional circumstances and when it appears to the "satisfaction of a Federal Reserve bank" that the applicant is "unable to obtain requisite financial assistance on a reasonable basis from the usual sources," that the bank is to be aided by the advice of an industrial advisory committee composed of members "actively engaged in some industrial pursuit" within the Federal Reserve district, and that the loans are to be made on a

reasonable and sound basis and granted only in pursuance of authority granted "by the Board of Governors of the Federal Reserve System," impel the inescapable conclusion that, when Congress used the term "may", it intended that the word should mean just what it says. In other words, it seems too clear for argument that the right to make a loan under this Act is merely permissive and enabling and not mandatory. Any other view is contrary to, and incompatible with, plain, everyday common sense. Certainly, Congress never intended any such absurd situation as plaintiff now belabors. See Raichle v. Federal Reserve Bank of New York, 2 Cir., 34 F.2d 910, 67 A.L.R. 1167; Fergus County v. Federal Reserve Bank of Minneapolis, 75 Mont. 582, 244 P. 883; Farmers' & Merchants' Bank v. Federal Reserve Bank of Richmond, 262 U.S. 649, 43 S.Ct. 651, 67 L.Ed. 1157, 30 A.L.R. 635.

The plaintiff urges, however, that if the granting of loans by a Federal Reserve bank is discretionary, then the defendant bank has abused its discretion; that the statute in question was enacted for the benefit of the public in providing credit and assistance for worthy institutions in need of obtaining additional working capital and financial aid where they are unable to obtain such assistance from local banks and other financial institutions. That this may have been the purpose of the statute may be conceded, but it does not follow that every time the bank turns down a worthy applicant for a loan it is to be mulcted in damages for the consequence thereof.

At the outset, we commence with the premise that Congress merely intended that, under certain definite limitations and safeguards, a Federal Reserve bank should be permitted to make loans to others than banking institutions. The essence of the charge herein, leaving out redundant language, is that the bank "willfully, arbitrarily, * * * and without good or justifiable reason, refused to make such loan to plaintiff." There is no language in the statute which spells out or suggests any duty or obligation on the part of the bank to make a loan to anyone. In fact, this statute is not basically different from the statutory authority which is found with respect to the business practices of national banking institutions. They likewise are authorized, circumscribed by certain

696

limitations and restrictions, to make loans to individuals and corporations. Surely, no one would have the temerity to suggest that a national banking institution would become liable in damages before a jury because some overly conservative official, with or without justification, turned down a loan which was tendered, accompanied by ample security.

 Plaintiff cites many cases where public officials have been mandamused and subjected to other proceedings where they have abused their discretion in the performance of their official duties, but such cases bear no analogy to the present situation. This statute is not to be confused with the statutes which define the duties of public officials, and which, while permissive in form, are in fact mandatory when a showing is made and an application is tendered as contemplated by the statute. Mandamus may lie where a public official willfully and arbitrarily refuses to obey a duty imposed upon him by statute. But no one will seriously contend that the plaintiff could have mandamused the defendant bank to grant a loan which the bank officials and the Advisory Committee refused to recommend. The officers of a Federal Reserve bank are not public officers, or officers of the Government, when they assume to perform the duties with respect to granting or refusing loans to persons other than banking institutions. I do not understand that it is suggested that the defendant bank could be classified as a public official. The analogy suggested is not applicable if for no other reason than that a Federal Reserve bank is not the only institution, public or private, which is empowered to grant credit to private concerns. No governmental or private monopoly exists in this defendant bank with reference to the granting of financial assistance in the State of Montana. In contemplation of law, plaintiff is not remediless if it is unable to invoke the defendant bank's aid. Many institutions are authorized to conduct general banking businesses in the State of Montana. The mere fact that the other institutions apparently refused the tendered loan does not change the status of a Federal Reserve bank.

 There is not the slightest suggestion or intimation in the enabling statute wherein it appears that Congress intended to subject any Federal Reserve bank to damages whenever, perchance, the officials may have refused to consider a good loan, and nothing is added to plaintiff's rights by characterizing such conduct as arbitrary, capricious, monopolistic and tyrannical. If the various governmental agencies such as the Federal Reserve banks, Reconstruction Finance Corporation, Federal Land banks, and others, had to consider the factor of damages whenever they exercised their discretion in passing on a loan, the efforts of the Government to aid the public in these times would be completely frustrated. The line of demarcation between a good loan and a poor risk is often obscure. To function intelligently and constructively, such institutions must be absolutely free to act, subject only to the restrictions of the statute, and when they have done this, their actions are not subject to review by a court. It seems elementary, therefore, that, under the statute in question, the bank, through its officials, could turn down a proposed loan for any reason, whether sound or otherwise, and be immune from any claim for damages by reason of its refusal. Where there is no obligation to make a loan, it must follow that no liability can arise on a claim which is based on a refusal.

In view of the disposition of the motion made by the defendant bank, it does not become necessary to discuss the motion to dismiss as directed to the attempt to make the Advisory Committee and the Board of Governors, as agents, parties to this action. It follows, therefore, that the motion to dismiss must be granted as to all defendants, and each of them, on both of the grounds set forth in the motion of the defendant bank, and it is so ordered. Let judgment be entered accordingly.

An exception is reserved to the plaintiff.